PITTMAN, administratrix, *vs.* ELDER *et al.*

Although the limitation act of March 16, 1869 (Acts 1869, p. 133), not only bars the right of action, but extinguishes the debt, yet where a valid and binding debt had become barred under that act, it could be revived by a new promise in writing, made after the lapse of the period within which the act provides for the bringing of suit, without an additional consideration for the promise.

(*a.*) Code, §§1950, par. 6, 2542, 2934, are applicable, and not repugnant to the limitation act of 1869.

March 23, 1886.

Statute of Limitations. Contracts. Consideration. Waiver. Before Judge CLARKE. City Court of Atlanta. September Term, 1885.

Aby Elder, for the joint use of herself and her sisters, Lucy Ivey and H. L. Fowler, brought suit against Mary E. Pittman, administratrix of Richard A. Pittman, and alleged that, as administratrix of Richard A. Pittman, defendant was indebted to them the principal and interest of the following note:

"ATLANTA, February 18, 1864.

"One day after date, I promise to pay Mrs. Asenath Pittman forty-two hundred dollars in gold, or its equivalent, for borrowed (trust) money. RICHARD A. PITTMAN."

The declaration proceeds as follows:

"Your petitioner further shows that said Asenath Pittman transferred and assigned said note to petitioners on the 19th day of February, 1865, by an entry on the back of said note, of which the following is a true copy, to-wit:

'FEBRUARY 19th, 1865.

' The within note was given for money left in my care or trust by my husband, Daniel Pittman, for his three daughters, Aby, Lucy and Henrietta. ASENATH PITTMAN.'

"Said note was delivered by the said Asenath Pittman to petitioner, Aby Elder, for the benefit of herself and said two sisters, immediately after the above stated entry was made on said note, the said Asenath Pittman thereby intending and endeavoring to transfer and assign said note to petitioners. They further show that, while said note was in the hands of petitioner, the said Aby Elder, said Rich-

ard A. Pittm in renewed said note and revived and renewed his obligation to pay the same on the 21st day of October, 1872, by making the following entry on said note, viz.:

'FAIRBURN, October 21st, 1872.

'I this day renew the above note, with lawful interest, to Mrs. Aby Elder.                                      RICHARD A. PITTMAN:'

"Petitioners further show that said Richard A. Pittman again renewed said note and revived and renewed his obligation to pay the same, on the 27th day of November, 1881, by making the following entry on said note, viz.:

'ATLANTA, November 27th, 1881.

'I hereby renew the within note to Mrs. Elder with lawful interest.
RICHARD A. PITTMAN.' "

The defendant moved to dismiss the case on the following grounds:

(1.) Because it did not appear from the declaration that the note declared on was assigned to plaintiffs.

(2.) Because no consideration is averred for the alleged new promises to pay the note.

This motion to dismiss was overruled, and the defendant excepted.

HOPKINS & GLENN, for plaintiff in error, cited: Acts, 1869, p. 133; Ang. Lim., §2; 3 *Ga.*, 265; 5 *Id.*, 232; 7 *Id.*, 163; 60 *Id.*, 379; 70 *Id.*, 444, 532; 95 U. S., 632; Wood Lim., 65; 9 How., 419; 72 *Ga.*, 1, 332; 5 Peters, 446, 457; 11 Wheat., 371; 62 *Ga.*, 299; Bump. Bank., 743; 53 N. Y., 523; 20 N. H., 466.

SPEAIRS & SIMMONS; HILLYER & BROTHER; HULSEY & BATEMAN, for defendants, cited: Code, §2936; 62 *Ga.*, 415; 57 *Id.*, 531; 49 *Id.*, 449; 72 *Id.*, 337; 54 *Id.*, 107, 537; 69 *Id.*, 524; 58 *Id.*, 86; Code, §§3587, 3590; 6 *Id.*, 588; 15 *Id.*, 399; 1 Pars. Con., 69; Wood Lim., 128; 64 *Ga.*, 697; 65 *Id.*, 57; 56 *Id.*, 86; 55 *Id.*, 29.

HALL, Justice.

The question made is, whether a debt coming within the limitation act of March 16th, 1869 (Acts, p. 133),

which not only bars the right of action, but extinguishes the debt, can be revived by a new promise in writing made after the lapse of the period in which the act prescribes for the bringing of the suit, without an additional consideration for the promise. The court held, on demurrer to the declaration, that the past indebtedness, which had never been paid to the owner of the claim, was a sufficient consideration to support the promise, and to entitle the plaintiff to her action; and such have been the rulings of this court in cases strictly analogous, as where the party making the promise has been discharged from liability by a final certificate in bankruptcy. *Weatherly vs. Hardman*, 68 *Ga.*, 592; *Ross vs. Jordan*, 62 *Id.*, 298, as to debt barred by statute of limitations. But were this a question of first impression, we should feel no difficulty in upholding the judgment overruling the demurrer, upon principles recognized and acted upon from an early period in England, and since invariably followed by the courts both of that and of this country. That principle is so well stated and fully illustrated and sustained in 1 Wharton on Contracts, §513, that we cannot do better than to extract from this learned and accurate author who says, "An *apparent* exception to the rule that a moral obligation is not a sufficient consideration to support a promise is to be found in the rule still recognized that the fact that a debt once binding has been discharged by law without satisfaction to the debtor is sufficient consideration to pay the debt. This has been held where a bankrupt promises to pay a debt discharged in bankruptcy; and *a fortiori* of promises barred by insolvent discharges, such discharges being only locally effective. The same view has been taken in regard to promises to pay a debt barred by the statute of limitations. But the validity of promises of this class is no longer placed on the consideration of moral obligation. The liability is now based exclusively on the right of a party to *waive* the protection of a statute relieving him from indebtedness. 'Where the consideration was originally

beneficial to the party promising, yet if he be protected from liability by some provision of the statute or common law meant for his advantage, he may renounce the benefit of that law; and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by the law to perform it,' " as was said by the entire court in Earle *vs.* Oliver, 2 Ex. R., 90. " And it has been held in this country that a promise to pay a debt which has been *voluntarily* released is void as without consideration. In connection with the position before us may be cited the rulings of the courts that parties to negotiable paper, *discharged* for want of notice of dishonor, become liable, if, after notice of such discharge, they promise payment. Whether the party promising had notice is to be *inferred* from all the facts of the case. Under the same head are sometimes classed promises by infants, which, it is alleged, are subject to ratification when they reach majority, and promises of married women renewed after divorce or their husband's death. But the analogy with the case of an infant *fails from the fact that the promise on his part*, according to the better view, *always bound, though not capable of enforcement during his minority*, and was *subject to repudiation* upon his majority. A married woman's promise, on the other hand, is at common law a *nullity* which no subsequent promise can resuscitate." The italics in the above extract are ours, and have been resorted to in order to point out the difference that undoubtedly exists between such original debts as could have been enforced at law, before they were barred and released by the application to them of common law rules and statutory enactment, and such as never could have been so enforced. According to all the authorities so copiously cited by this and other authors, this fact furnishes the test between such obligations as were purely voluntary in their origin, and are incapable of ratification or revival by a subsequent promise, and such as, being originally valid and capable of enforcement until barred or released by law,

are, for that reason, deemed a sufficient consideration for the renewed promise.

This section from Wharton should be considered in connection with that which immediately precedes it, in order to get its full force and precise application, and to appreciate fully the distinction here pointed out between such discharged contracts as will afford of themselves a sufficient consideration for the promise and such as will not. The law on this subject is well summarized in 1 Addison, on Contracts, §13, and the authorities cited in note 1 there and other notes fully sustain the view presented. See especially the well considered and ably argued case of Shepard & Co. *vs.* Rhodes and another, 7 Rhode Island R., 472, 474; also the exhaustive note (a) to Wennall *vs.* Adney, 3 Bos. & Pull., 249, where the old cases upon the subject are classified and explained in a manner which has met the approval of succeeding judges, both in this country and in England; Shepard & Co. *vs.* Rhodes and another, *ut sup.*, and the masterly judgment of Lord Denman in Eastwood *vs.* Kenyon, 11 Ad. & Ells, 438 (39 E. C. L. R., 142 *et seq*). This note, so generally adopted, restrains and limits the sweeping and broad views attributed to Lord Mansfield in his numerous judgments upon the subject, and vindicates him in large measure from what the annotator deems erroneous conclusions, inconsiderately drawn from expressions dropped in the course of his decisions. He especially relies upon Trueman *vs.* Fenton, Cowper's R., 544, 547, 549, which, we think, is a case well worthy of careful study and serious consideration, and, as explained by later decisions and text-writers, accurately sets forth the law upon this interesting and highly important question. We do not understand that the provisions of our law (Code, §§1950, par. 6, 2542, 2934), requiring a promise to waive a debt barred by the statute of limitations to be in writing, are either inapplicable or repugnant to anything contained in the act of limitations of the 16th of March, 1869, nor do we think that act interferes with, or in any manner

affects, such requirements.   Even if it be conceded that it
applies only to a specified and special class of cases, and
takes them out of the general provisions of the Code upon
that subject, it does not follow as a necessary consequence
that the statute destroys the debt so effectually that it can-
not be revived; all that it does is to open the courts to the
debtor and invite him to enter and protect himself from
his obligations by pleading its provisions in bar of a re-
covery.   It does not compel him to do this any more than
it constrains him to insist upon that or any other rule of
law established in his favor, but he may waive or renounce
it, when he does not by so doing injure others or affect the
public interests or abrogate or do away with enactments
made for the preservation of public order or good morals.
Code, §10 and citations.   *Peel vs. Bryson,* 72 *Ga.,* 331,
337, 338, which is directly upon the statute in question,
and affords an instance of an implied waiver of its benefits,
recognized and enforced by the courts; and such implied
waiver is not more efficacious and is not to be more highly
regarded than an express waiver in writing made with a
view to renounce this benefit and signed by the debtor.   It
is not readily perceived how it would promote public order
or good morals, or how others would be injured or the
public interests be advanced by prohibiting a party from
acknowledging and promising to pay a debt which had
never been discharged, and which he felt, in his conscience,
that, as an honest man, he could not refuse to recognize and
satisfy.   That honesty is the best policy is generally, if not
universally, conceded, and it will not be seriously contended
by any one that our law discourages and prohibits rather
than encourages and promotes the faithful discharge of
obligations honestly undertaken.   The cases of Dusen-
bury *vs.* Hoyet, 10 Bank. R., 313, and Way *vs.* Sperry,
6 Cush. R., 238, 241, relied on by the eminent counsel for
the plaintiff, we think, with all due deference to his high
character as a man and a lawyer, and his varied and accu-
rate professional learning, do not contravene but support

the view we have taken. There being nothing further in this record demanding consideration, it follows that we are of opinion the court below did not err, as alleged, in over-ruling the demurrer to plaintiff's declaration, and therefore we order the judgment affirmed.