BUSH & BROTHER *v.* RAWLINS.

<span style="float:right">89　117<br>p117　505</span>

Inasmuch as a tenant is bound by law to pay to the landlord the stipulated rent when it becomes due, a promise by the latter in the rent contract that in consideration of the faithful and prompt payment of the rent, he will, as a gratuity on his part alone, present to the tenant as a premium for the prompt payment of the rent, and give to him as a gratuity, all the personal property rented

with the plantation, embracing amongst other things eight mules, to be the right and property of the tenant in fee simple, is *nudum pactum;* and the landlord never having consummated the gift, but on the contrary having reclaimed and recovered the mules by a possessory warrant, the tenant acquired no title to the same, and cannot maintain an action of trover against the landlord to recover them or their value. This being so, the judgment of the court below is reversed, with direction that the action be dismissed as in case of nonsuit.        *Judgment reversed.*

March 26, 1892. Argued at the last term.

Landlord and tenant. Contract. Title. Before Judge Roberts. Dodge superior court. February adjourned term, 1891.

Trover was brought on August 6, 1889, by Rawlins against Bush & Brother. He obtained a verdict, and the defendants excepted to the overruling of their motion for a nonsuit, and to the denial of a new trial. The grounds of the motion for nonsuit were, that the plaintiff had shown no title to the property (seven mules); that there was no proof of a conversion, and no proof of any demand. Over objection of the defendants, the plaintiff introduced in evidence a contract executed by Bush & Bro. and by the plaintiff and one Horne, but from which Horne's name had been erased, dated January 10, 1885, by which Bush & Bro. rented to the plaintiff and Horne, for the year 1885, a certain plantation, also certain wagons and carts, also eight head of mules (naming them), also plows and gear, hoes, etc., 75 head of hogs, more or less, to raise on halves, and all the corn and fodder and 1,000 bushels of cotton-seed, more or less; for which the plaintiff and Horne agreed to pay Bush & Bro. one half of all crops grown on said farm, cotton ginned and baled, and other crops in barns; Bush & Bro. to pay one half for ginning, baling and ties. In consideration of the faithful and prompt payment of the above and foregoing rent, upon its payment Bush & Bro., "as a gratuity upon their part alone, will present, as a performance [premium?] for the prompt

payment of said rent to and given as a gratuity, all the personal property herein levied [rented ?] by the said Bush & Bro. to said Rawlins and Horne for their own right and property in fee simple." The plaintiff, testifying, proved the execution of the contract. The name of Horne was erased by an understanding between witness and Horne. Horne withdrew from the business, transferring his interest in contract to witness, to which Mr. Tom Bush consented, and witness was to take it all himself. Knows the property described in the petition; it is the same as in the agreement. "I paid defendants half of the crop as I gathered it in 1885 ; paid them nine bales of cotton, half the corn and half of all the crop made. Had the cotton ginned, packed and delivered to Bush ; the other crops were delivered in the barns. The crop was to be paid for in the fall of 1885, no particular time. Am not due anything for rent. The mules were taken out of my possession by the sheriff. Next saw them on the Bush plantation. Heard Bush testify that the property was in his possession in Jan., 1886, and afterwards saw them on Bush plantation in possession of Parrott who had rented from Bush." Cross-examined : "Don't know who made the erasures in the agreement; don't remember who did it ; I did not do it. There were two agreements executed at the same time." (Witness identifies the other agreement in which there are no erasures. It contains the same provisions as the one above recited, the differences being that it is dated January 12, 1885, and is between Bush & Bro., and the plaintiff and Horne.) "Horne was my brother-in-law. The property in dispute belonged to defendants. Horne worked until March. Corn and cotton gathered in October or November. Paid Bush one rent in September and in October and November. The cotton was not all gathered. I got nine bales cotton, and Bush got nine. The balance remained in the patch.

Was prevented from gathering by Mr. Bush sending sheriff who levied distress warrant on it. Cannot say how much corn I gathered. I hauled it in by the wagon-load. I put it in the barn. Don't know what became of the hogs. The plows and gear and hoes were worn out. I put the cotton-seed in the house. Have not had possession of the mules since about 1st Nov., 1885. After the mules were taken possession of by the sheriff under the possessory warrant, afterwards were taken from me, it throwed me on the ground. I couldn't pay anything. I had half-interest in the mules, and had Horne's half-interest. I paid him for it about first March, 1885. The property was not taken by my consent; did not go into Bush's possession by my consent. Bush was not holding same for my benefit."

The defendants introduced the record of a possessory warrant proceeding instituted on November 30, 1885, by the affidavit of T. J. Bush for Bush & Bro., against the present plaintiff, for eight described mules; and it appears therefrom that on December 8, 1885, the sheriff seized seven of the mules, and that on December 17, 1885, the justice who issued the warrant awarded the possession of the mules to Bush & Bro., provided they should give bond under the code, §4035. (See 80 *Ga.* 584.) Also, the record of a distress warrant proceeding instituted on October 31, 1885, by the affidavit of T. J. Bush for Bush & Bro., against the present plaintiff and Horne, for the rent of the plantation for that year, with the levy by the sheriff on the crops grown by the tenants. (See 80 Ga. 588.) There was testimony of T. J. Bush and Parrott, tending to show that Bush never consented for Rawlins and Horne to change the contract or for Horne to come out of it, and knew nothing about his doing so; that the customary time for the payment of rent was on the 15th of October; that the rent was not paid; that the defendants

furnished much more than the contract called for, to run the plantation ; that the plaintiff never set up any title to the mules before the suit, and made no demand for them as his own, but tried to buy them from T. J. Bush.

DeLACY & BISHOP and A. C. PATE, for plaintiffs in error.

SMITH & CLEMENTS, *contra*.