BROWN *v.* LATHAM.

There being abundant moral obligation set out in the petition, and it not being certain, in view of the great age of the defendant's father and the alleged influence of the defendant over him, that there was any moral turpitude on the part of the father in yielding to the son's advice to convey property to the latter for the purpose specified, there was no error in overruling the demurrer to the petition. The petition is not multifarious, the object of the same being to settle and adjust the rights of the parties in respect to their father's estate as a whole.

July 17, 1893.

Equitable petition. Before Judge JANES. Haralson superior court. January term, 1893.

Plaintiff and defendant are the daughter and son of W. J. Brown who died intestate on October 12, 1886, his only heirs being these two parties and his wife. During his life, as the petition alleges, he accumulated a large amount of property consisting in part of thirteen described lots of land, worth $5,000, of which he died in possession. On January 10, 1869, one Satterfield was appointed administrator (of whom is not stated), and W. J. Brown and one Goldin were sureties on his bond. As administrator he failed to account to the beneficiaries of the estate for the money thereof; suit was brought, June 16, 1882, on his bond, and at the July term, 1884, of the superior court, judgment was rendered against him and his sureties for $700 principal, $90 interest, and costs. When this suit was brought W. J. Brown was very old, infirm and feeble in body and mind, and defendant was his confidential adviser and counselor in whom he had the utmost confidence and by whose advice he was easily influenced. Defendant advised and procured him to make defendant a deed or deeds to the land about 1882 or 1883, agreeing that if he would do so, defendant would procure a compromise of the suit and would then deed the land back to W. J. Brown. Sat-

terfield and Goldin were both insolvent. Under these
circumstances and with said agreement W. J. Brown
made to defendant a deed to the land. Afterwards ex-
ecution issuing from said judgment was levied on the
land as the property of W. J. Brown, when defendant
filed his claim, which remained undisposed of until it
was compromised by defendant and Goldin paying be-
tween four and five hundred dollars, each paying half,
and the claim was dismissed. W. J. Brown lived and
died on the land, and immediately after his death de-
fendant took possession of it, and then promised plain-
tiff that he would pay her her one third of the value of
the land as soon as his claim should be settled. In pur-
suance of this promise, in 1887 he paid her $100 and in
1888 paid her $100, which is all he has paid her of her
father's estate. In 1887 he delivered to her three lots
of the land (giving their numbers), agreeing to make
her his deed to these lots and also to account to her for
her part of the value of the other lots. Since that time
she has continued in possession of these three lots, he
being in possession of the other ten and receiving all
the rents and profits thereof. When he took possession
of the thirteen lots they were worth $5,000, and he was
then due and owing her $1,666.66 as her one third part
thereof. When the three lots were delivered to her they
were worth $500, which she accepted as a payment on
her interest in all the land. Adding to this the $200
he paid her, leaves him still due her $966.66 besides
interest, which he refuses to pay, and he refuses to make
her a deed to the three lots. She prays that he be re-
quired to execute to her a deed to the three lots, that
they be decreed to be her property, and that he be com-
pelled to pay her the $966.66 principal, with interest.

The grounds of demurrer appear in the opinion.

ADAMSON & JACKSON and W. F. BROWN, for plaintiff in
error. No appearance *contra.*

Bleckley, Chief Justice.

The petition in this case was filed in July, 1891. Consequently it is governed by the law of pleading and procedure as shaped by legislation up to that time. If the petition is good either as a legal or as an equitable action, it should be upheld. The plaintiff and defendant are sister and brother, the daughter and son of a father who died intestate in 1886, leaving these parties and his widow as his only heirs at law. According to the allegations of the petition, the defendant has more than his due share of the assets of the father's estate, consisting of certain lands. It does not appear that any administration upon the father's estate has been granted, or that there is any impediment to an accounting and settlement between these parties as equitable tenants in common touching these lands, and as contracting parties in respect to the same. The points insisted upon as impediments are: first, that the petition shows on its face that the father having in his lifetime conveyed the land to the defendant for the purpose of defrauding a creditor of the father, a court will not aid the sister of the defendant, any more than it would the father, to recover the lands or any portion of them from the defendant; consequently, that the lands are not to be treated as a part of the father's estate; secondly, that this being so, there was no consideration for the alleged contract by the defendant with the plaintiff to account to her for the lands or any part of their value; third, that the petition is multifarious; and fourth, that it is barred by the statute of limitations. Other grounds are mentioned in the demurrer, but they are of no consequence.

Treating the action as getting its standing in court not alone from the respective rights of the parties as heirs of their father, but partly from the contract between them which is alleged, it does not affirmatively appear that as much as four years had expired from the

time this contract was to be performed until the action
was brought.   The time appointed for performance was
when the claim case was settled, and it does appear in-
ferentially that that occurred sometime in the year 1887,
or sooner, for in that year a payment was made upon
the contract.   The day and month of this payment were
not stated, and whether it was earlier or later than July
cannot be ascertained from anything disclosed by the
declaration.- Hence it does not affirmatively appear that
the action was barred.

With respect to turpitude in the agreement between
father and son, it may be said that if a fraud was intended
the son concocted it, and on account of his influence
over the father and the age and weakness of the latter
there is no certainty that the father, of his own free
will, participated in the fraudulent intention or was *in
pari delicto* with the son.   The petition certainly en-
deavors to throw all the blame of that transaction upon
the son, and nothing is disclosed inconsistent with the
theory that the father was led into it by the undue ex-
ertion of the son's influence over him.

Touching the contract which the parties made after'
the father's death, there was ample moral consideration
to uphold it if the  petition be true, for even if the son
was in a position to protect himself against reconveying
to the father, he could waive that protection, and, upon
his moral obligation to share the lands with his sister
in proportion to her interest as a coheir with himself,
could contract with her to retain both her interest and
his own in some of the lands, convey to her the balance,
and pay her a money compensation besides.   It is true
another coheir, the widow, might have reason to com-
plain at this, and she might be a proper if not a neces-
sary party to the present action, but no objection on
account of her not being a party was made.   We think
the moral duty of the defendant to account to his sister

for her interest in the land, although it may not have been a legal interest or one that could be enforced, would be a sufficient consideration to uphold the contract between them.

The point made in the demurrer that the father had not complained of the conveyance in his lifetime has no force, because the time for a reconveyance agreed upon had not arrived when he died. Until that time arrived the son was to retain the title to the property, and before it arrived he contracted with his sister to convey some of the property to her and retain the balance himself. To refer again to the widow, it may be that all this was satisfactory to her. She may have acquiesced in it without complaining, and if she did, no one else has a right to complain.

The objection that the petition is multifarious is not sustainable, because under our present system of pleading, contract rights, though they may relate to separate and distinct subject-matters, may all be enforced in one and the same action. Here the object is to settle up the claims of these parties and adjust their rights in respect to their father's estate in this land as a whole; and the contract between them covers the whole. It may be that a decree or judgment should be rendered for the plaintiff only on terms, such as that she execute a relinquishment to the defendant as to all the lands which he by the contract was entitled to retain. If she gets a conveyance from him of some of the lots, it may be that it would be equitable under the spirit of the contract for her to relinquish or release to him all her claim to the other lots. On the points presented in the demurrer we think there was no error in overruling it.

*Judgment affirmed.*