## DAVIS & COMPANY *v.* MORGAN.

Where a contract of employment is made for one year at a stipulated salary per month, an agreement during the term to receive less, or to pay more, than the contract price is void, unless supported by some change in place, hours, character of employment, or other consideration.

Protection to person and property is the duty of the State, and in pursuance thereof laws are made to protect property and award damages for breach of contract, but courts can not enforce promises binding on the conscience, except in those cases where some pecuniary damage flows from the breach, or where, in addition to the moral obligation, the promise is also supported by a legal consideration.

Argued February 26, — Decided March 19, 1903.

Complaint. Before Judge Seabrook. McIntosh superior court. July 28, 1902.

*Osborne & Lawrence*, for plaintiff in error.
*Gignilliat & Stubbs*, contra.

LAMAR, J. Davis & Company employed Morgan for one year at $40 per month. After the contract had been in force for some time Morgan received an offer of $65 per month from a company in Florida, and mentioned the fact to Davis, saying that of course he would not go without consent. Davis insists that he then said, if Morgan would stay out the balance of the term and work satis-

factorily he would give him $120 at the end of the year. Morgan says that Davis stated, "I will add $10 a month from the time you began, and owe you $120 when your time is up." Davis & Company discharged Morgan two or three weeks before the end of the term, because the latter had gone to Florida for several days without their consent. Morgan insists that he told Davis that he was going, and that Davis made no objection. He claimed that he was discharged without proper cause, and brought suit for the extra compensation promised. The jury found a verdict in his favor; and the court having refused to grant a new trial, Davis & Company excepted.

If the promise contemplated that Davis & Company were to pay Morgan $10 per month for that part of the year which had already passed, and as to which there had been a settlement, it was manifestly nudum pactum; for a past transaction, the obligation of which has been fully satisfied, will not sustain a new promise. *Gay* v. *Mott*, 43 *Ga.* 254. And the result is practically the same whether Morgan or Davis was correct in the statement of the conversation. (Both proved a promise to give more than was due, and to pay extra for what one was already legally bound to perform. The employer therefore received no consideration for his promise to give the additional money at the end of the year.) Morgan had agreed to work for twelve months at the price promised; and if during the term he had agreed to receive less, the employer would still have been liable to pay him the full $40 per month. On the other hand the employer could not be forced to pay more than the contract price. He got no more services than he had already contracted to receive, and, according to an almost unbroken line of decisions, the agreement to give more than was due was a nudum pactum and void as having no consideration to support the promise. The case is something like that of *Bush* v. *Rawlins*, 89 *Ga.* 117, where the landlord agreed to give the tenant certain property if he would pay his rent promptly, and it was held that such a promise was a gratuity and void as without consideration to support it. And see *Tatum* v. *Morgan*, 108 *Ga.* 336 (2); Civil Code, § 3735. It is also within the principle of Stilk *v.* Myrick, 2 Campbell, 317, where Lord Ellenborough held that an agreement to pay seamen extra for what they were bound by their articles to do was void. And so in Bartlett *v.* Weyman, 14 Johns. (N. Y.) 260, a similar

ruling was made in a case where a master agreed to give more wages if the seamen would not abandon the ship. See also Ayers *v.* C. R. I. Ry. Co., 52 Iowa, 478. There are cases holding that a new promise is binding where one of the parties to a contract refuses to perform, and to save a loss the innocent party agrees to pay more than the original contract price if the other will perform as originally agreed. Goebel *v.* Linn, 47 Mich. 489. But even if that line of cases should not be disregarded as tending to encourage a breach of contract, they do not affect the rights of Morgan here, because he does not bring himself within their ruling. Had there been a rescission or formal cancellation (Vanderbilt *v.* Schreyer, 91 N. Y. 402) of the old contract by mutual consent, and if a new contract with new terms had been made; or if there had been any change in the hours, services, or character of work, or other consideration to support the promise to pay the increased wages, it would have been enforceable. But as it was, Morgan proved that Davis promised to pay more for the performance of the old contract than he had originally agreed. Such a promise was not binding.

It was argued that the moral obligation would support the promise here, and undoubtedly there are cases in which such consideration has been held to be sufficient; for example, that arising from the duty of a father to support his bastard child. *Hargrove* v. *Freeman,* 12 *Ga.* 342. At one time Lord Mansfield was quoted as having said that all promises deliberately made should be held binding; but Lord Denman, in Eastwood *v.* Kenyon, 11 Adol. & El. 438, attempted to show that this was either a misquotation, or that, if such a doctrine could have been deduced from whatever he said, the court had refused to follow it in Littlefield *v.* Shee, 2 Barn. & Ad. 811. The cases holding in conformity with Lord Mansfield's supposed statement, while set out in *Hargrove* v. *Freeman,* supra, were not adopted as law, because the court finally held that the principle to be deduced from the general current of authorities is, that for a moral obligation to constitute a sufficient consideration to support an express promise, it must be founded upon an antecedent valuable consideration, though respectable authority can be adduced on the other side. In an agreement by one partner to pay the other for extra work (*Gray* v. *Hamil,* 82 *Ga.* 375), in the promise by a landlord to refund to tenants money paid by them

for worthless fertilizer (*Parrott* v. *Johnson*, 61 *Ga.* 475), and in the agreement by a brother to account to a sister for her interest as an heir at law in land which he had improperly induced the father to convey (*Brown* v. *Latham*, 92 *Ga.* 280), the court recognized that there was a moral obligation to support the promise, but in each of the cases there was something very close akin to a legal obligation, or to a trust. In *Pittman* v. *Elder*, 76 *Ga.* 371, it was shown that an agreement to pay a debt barred by the statute of limitations, or discharged in bankruptcy, was not supported by what was formerly called a "moral obligation," but by the antecedent obligation; the new promise to pay amounting simply to a waiver of the statute, or of the discharge. The Civil Code, § 3658, defines a good consideration to be such as is founded on natural duty and affection, or "on a strong moral obligation." In the light of the authorities, however, the strong moral obligation here referred to seems to be one supported either by some antecedent legal obligation, though unenforceable at the time, or by some present equitable duty. The section, however, does not relate to the moral obligation which inheres in every promise. *Austell* v. *Humphries*, 99 *Ga.* 416. While all courts recognize the obligation arising from any undertaking, they are, from the necessity of the case, forced to hold that naked promises must depend for their performance solely upon the will of the promisor, and not upon the tribunals which are organized to perform the "duty of government to protect person and property," and in pursuance thereof to award money damages for breaches of contracts. Civil Code, § 5699. But they can not enforce promises binding on the conscience, except in those cases where some pecuniary damage flows from the breach, or where, in addition to the moral obligation, the promise is also supported by a consideration. When one receives a naked promise and such promise is broken, he is no worse off than he was. He gave nothing for it, he has lost nothing by it, and on its breach he has suffered no damage cognizable by courts. No benefit accrued to him who made the promise, nor did any injury flow to him who received it. Such promises are not made within the scope of transactions intended to confer rights enforceable at law. They are lightly made, dictated by generosity, courtesy, or impulse — often by ruinous prodigality. To enforce them by a judgment in favor of those who gave nothing therefor would

often bring such imperfect obligations into competition with the absolute duties to wife and children, or into competition with debts for property actually received, and make the law an instrument by which a man could be forced to be generous before he was just. Both under the civil and common law, courts were prohibited from enforcing contracts without consideration, and relegated the performance of such promises solely to those who made them.

*Judgment reversed.     By five Justices.*