"Wickham, J.
This cause is submitted to the court on a general demurrer to the petition. The facts as shown by the petition are: that on the 19th day of November, 1904, the plaintiff and defendant entered into a contract in writing as follows:
“This agreement made this 1st day of October, 1904, by and between O. W. Cole, banker of Upland, Indiana, party of the first part, and J. B. Scohy, of Mathews, Indiana, party of the second part, witnesseth: that the party of the first part shall pay to the party of the second part one hundred and fifty dollars ($150) per month from October 1st, 1904, until July 1st, 1905, and in consideration of the above, the party of the second part agrees to manage and superintend the factory known as the ‘Sun glass factory,’ situated in Mathews, Indiana, owned and operated by the said party of the first part.
‘ ‘ In witness whereof, we have hereunto set our hands and seals this 18th day of November, 1904.
“(Signed) C. W. Cole,
“(Signed) John B. Scohy.
‘ ‘ Signed, sealed and delivered in presence of---. ’ ’
On the next day, November 19, 1904, the following written agreement was entered into by them:
“Whereas, on the 2d day of June the Sun Glass Company, a corporation of Indiana, was indebted to Charles W. Cole, of Grant county, Indiana, in the sum of ten thousand dollars ($10,000), with six per cent, interest from July 15th, 1902, and
“Whereas on the — day of--, 1904, the Sun Glass Company transferred to the said Charles W. Cole the Sun glass factory, to secure the payment of said indebtedness, and
“Whereas, it was agreed by and between the Sun glass factory and the said Charles W. Cole, that the said Charles W. Cole should operate the said factory until all the indebtedness to the said Charles W. Cole and all expenses of operating the same were satisfied in full and all money he expended in procuring gas for said Sun Glass Co., if he could do so by July, 1906.
“Whereas, the said Charles W. Cole agreed on the 18th day of November, 1904, to employ one John B. Scohy, for nine months *201 from October 1st, 1904, at the rate of $150 per month to manage and superintend said factory until all debts against said factory were .paid and fully discharged.
“Now, therefore, this further agreement made and entered' into this 19th day of November, 1904, by and between Charles W. Cole and John B. Scohy, witnesseth:
“That as an inducement and further consideration for John' B. Scohy to exert his utmost efforts to manage and superintend said factory well and to satisfy the existing debts as soon as possible, the said Charles W. Cole hereby agrees to pay the said John B. Scohy the sum of $2,000 as a bonus at the time said debts are paid and discharged.
“In witness whereof, the parties have hereunto set their hands and seals this 19th day of November, 1904.
“John B. Scohy,
“Charles W. Cole.”
In pursuance of the agreements the plaintiff superintended and managed the factory for the nine months from October 1, 1904, to July 1, 1905, “and did exercise and put forth his utmost efforts and rendered the defendant extraordinary services therein, and did pay off and discharge all of the debts and obligations.” The defendant paid the plaintiff the $150 per month for the term of employment, according to the terms of the first contract, but refused to pay $2,000 mentioned in the second agreement, and the suit is °to recover that sum.
The ground of the demurrer is, that there was no consideration for the promise to pay the $2,000; that the plaintiff did not agree to do, and did not do anything more than he was legally bound to do under the first agreement.
Counsel for the demurrer in support of their argument cite the case of Harris v. Watson, 1 Peake N. P. (Ed., 1795), 72. In that ease it appears that the master of a ship promised his crew an addition to their fixed wages, in consideration of, and as an inducement to their extraordinary exertions during a storm. This promise was held to be nudum, pactum; the voluntary performance of an act which it was before legally incumbent upon the party to perform, being in law an insufficient consideration. Storms and their consequent perils at sea are incident to the employment of sailors, and in their contract of employment seamen impliedly agree “to put forth their utmost efforts, and ren *202 der extraordinary services,” when the necessity arises, to 'save the ship and cargo from wreck and loss. It was on this ground .that, in.the case cited, the court held the sailors not entitled to recover; otherwise, it would not have been "an act which it was before legally incumbent on them to perform.”
' We are unable to see the analogy between the case cited and the case at liar, claimed by counsel for the demurrer in his argument.. The facts of the petition do not show that the Sun glass factory, or the defendant’s claim against the company, was a distressed vessel tossed about upon the angry and tempestuous financial waves of the times, which threatened immediate destruction. And if so, then that condition existed when the first contract was made, and that fact destroys the analogy.
The case of Ward v. The Board of Education of Toledo, 21 C. C., 699, is cited. Ward was employed as the superintendent ■of the public schools of the city of Toledo at a salary of $1,800 per year. TIis term of employment commenced on-.February 1, 1898, and continued till July 1, 1899. He entered upon the performance of his duties, and on April 4, 1898, by reason of the meritorious services of their superintendent, the board attempted voluntarily to increase his salary to $2,500 per year from April 1, 1898, to the close of the term of employment. Nothing had been done or promised by Ward outside of his duties as superintendent. He received his salary of $1,800 but the board refused to pay the $700 excess, for which he brought suit. It was held he could not recover, because the promise of the board to pay the $700 per annum additional was without consideration.
The case of Davis & Co. v. Morgan, 117 Ga., 504 (s. c. 43 S. E., 732; 61 L. R. A., 148), is also cited. Morgan was an employe of Davis & Co. for one year at $40 per month. "After the contract had been in force for some time; Morgan received an offer of $65 per month from a company in Florida, and mentioned the fact to Davis, saying that of course he would not go without consent.” Davis & Co. then told Morgan that they.would-give Tmn $120 extra compensation if he would stay till the end .of the year and work satisfactorily. Morgan brought suit for the extra compensation promised, but failed to recover. The- court said:
*203 “Morgan had agreed to work for twelve months at the price promised, and if during the term he had agreed to receive less, the employer would still have been liable to pay him the full $40 per month. On the other hand, the employer could not be forced to pay more than the contract price. ITe got no more services than he had already contracted to receive, and according to an almost unbroken line of decisions the agreement to give more than was due was a nudum pactum, and void, as having no consideration to support the promise.”
These authorities, we think, are clearly distinguishable from the case at bar. In neither case was anything given or promised that was not embraced within the terms of the original contract. But in the case before us, the plaintiff, under the terms of his original agreement, was legally bound to render ordinary services, or reasonably efficient services only. He was not bound to “put forth his utmost efforts,” “or to render extraordinary services. ’ ’ They were beyond and outside the terms of his contract,' legally construed. Extraordinary services, the result of utmost efforts, would mean the doing of things not pertaining or incident to the duties of a superintendent; it would mean longer hours of service; it would mean, in short, the doing of everything by the'superintendent that would be of benefit to the concern, at whatever cost of comfort, time or labor.
The court in their opinion in the case last cited, give expression to the following language, which I think is significant:
“If there had been any change in the hours, services, or character of work, or other consideration to support the promise to pay the increased wages, it would have been enforceable.”
The plaintiff’s promise in the second agreement “to exert his utmost efforts,”.implies a change in hours, services and character of his work, and was a good consideration for the promise of the defendant to pay him the $2,000 additional compensation.
The demurrer is overruled.