15716. BRAZELL *v.* HEARN, administrator.

1. If a promissory note is given by one person to another in payment or extinguishment of the debt of a third person, there is a valuable consideration which will support an action thereon by the payee, provided the third person was actually indebted. "On the other hand, the mere debt of another, without discharge, forbearance, or other new consideration, will not support the note of a stranger to the debt." 8 C. J. 219, 220; *Davis* v. *Tift,* 70 *Ga.* 53 (2); *Johnson* v. *Rycroft,* 4 *Ga. App.* 547 (2 c) (61 S. E. 1052); *Saul* v. *Southern Sealing Co.,* 6 *Ga. App.* 843, 847 (65 S. E. 1165), and cases cited. A valuable interest in the estate or assets of a deceased husband will support a note given by the widow to a creditor of the deceased; but if no assets are received from the estate, the note is without consideration. 8 C. J. 222. Mere love and affection, or a moral obligation alone to pay the debt of a deceased person who left no estate, will not support a promissory note for the amount of the debt. *McElven* v. *Sloan,* 56 *Ga.* 208; *Loudermilk* v. *Loudermilk,* 93 *Ga.* 444 (21 S. E. 77).

2. The provision of the code which declares that a wife can not bind her separate estate for the debts of her husband does not affect the power of a widow to contract with reference to such debts after his death. *Walker* v. *Walker,* 139 *Ga.* 547 (7 a) (77 S. E. 795); *Mize* v. *Hawkins,* 54 *Ga.* 501 (1); *Booker* v. *Small,* 147 *Ga.* 566 (2) (94 S. E. 999). But the rule that the death of the husband relieves the wife from the disabilities of coverture, so that she may then contract as a feme sole with regard to the debts of her deceased husband, does not render inapplicable the rules stated above.

3. "While it is true that a married woman who personally applies to a tradesmen for the purchase of groceries [and other necessaries], stating that she wishes to open an account in her own name, and directs the plaintiff to charge the goods to her, will be personally liable therefor, where in pursuance of such express understanding the goods are delivered and charged to her, . . still the husband is bound to support the wife, and where necessaries are furnished to the wife in the absence of any such express agreement, the presumption is that she contracted for them in the right of her general agency for her husband, and that he, and not she, is liable. . . This is true even though the creditor may have himself intended to credit the wife and not the husband, unless it be that such intention was expressly declared or communicated to the wife." *Ga. Grocery Co.* v. *Brunson,* 24 *Ga. App.* 484 (101 S. E. 130); Civil Code (1910), §§ 2996, 2997; *Rushing* v. *Clancy,* 92 *Ga.* 769, 771 (19 S. E. 711); *Robinson* v. *McCommons,* 24 *Ga. App.* 106 (2) (100 S. E. 43); *Goodson* v. *Powell,* 9 *Ga. App.* 497 (71 S. E. 765); *Morrison* v. *Evans,* 31 *Ga. App.* 256 (120 S. E. 430).

4. Where a husband opens an account with a merchant for the purchase of necessaries and other goods, the debt is his own, even though such goods may have been consumed in whole or in part by the wife. Likewise, where the husband, assuming to act as the agent of the wife, has the account opened and the goods charged in the name of the wife, the wife will not be held liable therefor, even though the creditor may have charged the account and extended the credit solely in her name, unless it be shown that the husband was in fact authorized to act as such agent, or that the wife subsequently ratified his acts, either expressly, or impliedly by continuing to accept and enjoy the goods received by her with knowledge of his acts and of the merchant's extension of credit to her, or by giving a note or other obligation for the indebtedness with full knowledge of the facts and circumstances. See *Foster* v. *Jones,* 78 *Ga.* 150 (1) (1 S. E. 275); *Blackstone* v. *Widincamp,* 145 *Ga.* 689 (89 S. E. 745); *Woodward* v. *Fuller,* 145 *Ga.* 252 (5) (88 S. E. 974); *Wheeler County Bank* v. *Hargroves,* 148 *Ga.* 487 (97 S. E. 69); *Eberhardt Machine Works* v. *Houser,* 18 *Ga. App.* 35 (88 S. E. 751); *Va.-Carolina Chemical Co.* v. *Wisenbaker,* 18 *Ga. App.* 528 (89 S. E. 1053); *Moore* v. *Sims,* 24 *Ga. App.* 296 (1) (100 S. E. 647).

5. For the reasons stated in the opinion, in which the general grounds and the special assignments of error with reference to the charge of the court and the admission of evidence are dealt with, the court erred in refusing a new trial to the defendant.

DECIDED FEBRUARY 14, 1925.

Complaint; from city court of Reidsville—Judge Cowart. May 20, 1924.

The amended answer of the defendant set up that the note sued upon, for $820.48 principal, was executed by her "for the payment of an open account for goods and merchandise," for which she "was not liable . . except for about $100 of said amount, which was purchased by her since the death of her deceased husband, which

occurred on or about March 15, 1915, and that the balance of said account, having been contracted while her said husband was alive, and for goods and merchandise for the necessary support and main-tenance of the family of her said husband, her said husband was alone liable for the payment of said account over and above said amount purchased by defendant since the death of her husband, . . and defendant says, therefore, that there was no consideration for the said note, so far as relates to her, for the said note of $820.48, for an amount of said note over and above said sum of about $100, and defendant here pleads said want of consideration" for the said difference, "and says she is not liable therefor." The jury found for the plaintiff in the full amount. The defendant excepts to the refusal of a new trial.

The testimony showed that the husband died on March 26, 1915, leaving no property; that only $66.98 of the amount included in the note, which was executed on April 13, 1922, represented goods purchased by the wife after the husband's death; and that the entire account had been running since 1905. The plaintiff payee of the note testified, that the husband had no property, that "these goods were charged to and sold on the credit of" the wife; that "she sent for the goods;" that the reason he knew this was that "she sent orders part of the time, and the orders are in writing;" but it further appears that all such orders were subsequent to his death. The plaintiff testified that the defendant "knew in the lifetime of" the husband "that the account was charged to her, and there was no objection to it;" but he further swore, "I do not know of my own knowledge that she knew the goods were being charged to her; well, she ought to have known it," since both her children and husband would come for them; "I have got evidence other than these orders that she sent for the goods;" "I don't know that she got them, . . but it was carried to her house, and left there, I guess; I don't know what went with it; her own children got it." These "children" were not shown to be minors, the defendant testifying that she was 75 or 76 years old. The plaintiff further testified that at the time the defendant signed the $820.48 note, a statement showing the amount of the entire account as that sum was handed to her, and that she made no objection; but it does not appear that she then knew that the goods had been previously charged to her. The defendant denied that she knew that the goods

were bought in her name by the husband, testifying, "I don't know whether he had the goods booked to me or not." The suit was not only on the note for $820.48, but on four others for $75 each. The answer as amended coupled a plea of mental incapacity of the defendant at the time of executing the notes with the defense that the plaintiff, to obtain her signature on the $820.48 note, misstated the total indebtedness, by telling her that the note included both the previous open account and the other four notes.

*E. C. Collins, A. S. Way,* for plaintiff in error.

*P. M. Anderson,* contra.

JENKINS, P. J. (After stating the foregoing facts.) 1-5. Under the ruling stated in the syllabus, and the rule that a party's testimony, where doubtful or contradictory, is to be taken most strongly against him, the plaintiff failed to show the agency of the husband, or any special contract with the defendant wife to become independently liable for the necessaries and goods charged to her account, or any subsequent express or implied ratification by her, during the life of the husband, of the acts of the husband and the plaintiff merchant, with any knowledge of the facts upon her part. Nor does such an implied ratification subsequent to the husband's death appear from her act in signing the note sued upon, since it was not shown, by any sort of clear and unambiguous evidence, that she then had knowledge that her husband had assumed to contract for her, and that the plaintiff had charged the account in her name, and that that the plaintiff had charged the account in her name, and that she was executing the note for such a debt. If, on the other hand, the defendant executed the note in part to discharge the previous account contracted by her husband, with the understanding that the debt was his, the evidence fails to show a valuable consideration for the assumption of such debt,—either that her execution of the note had canceled, discharged, or balanced off the account of her husband, or had caused any forbearance by the credtior, or that she had received a new consideration, it being conceded that the husband left no estate. Except as to the $66.98 balance, contracted by the defendant herself after her husband's death, there was a want of consideration and liability, so far as the testimony discloses, and the verdict in excess of that amount on the $820.48 note was contrary to law, as without evidence to support it. See *Smith* v. *Head,* 75 Ga. 755 (2), 757; *McCord* v. *Thompson,* 131 Ga. 126, 128, 129 (61 S. E. 1121).

(*a*) In ground 12 of the motion for a new trial exception is taken to an instruction that in determining whose debt the note was given to settle, "the jury may consider all the facts and circumstances surrounding the case; you may consider, in the first place, who was the debt charged to on the books, but I charge you, however, that merely charging a debt to a certain person on books of a merchant wouldn't make that person liable for them, unless it was in truth and in fact the debt of the person to whom it was charged, but I say you can consider the fact as to whom it was charged in determining whose debt it was originally." It is contended that this was erroneous because a charge on the books to the defendant would not be any evidence to bind her, in the absence of proof that she made the entry or had knowledge thereof or acquiesced therein. The language quoted was error, likely to have confused the jury in determining whether the defendant had impliedly ratified the act of the husband in assuming to act as her agent, or the act of the creditor in extending credit and charging the account in her name, even if the evidence as to such a ratification were sufficient to have authorized a charge thereon. Under the rules stated in the 3d and 4th headnotes, the mere charging of the account would be irrelevant even as a circumstance in determining the issue as to whether the indebtedness on the account was that of the wife or that of the husband, in the absence of some evidence either that the wife originally authorized the acts of the husband and the creditor in charging the indebtedness to her, or that she subsequently, with knowledge of the facts, ratified such acts expressly or impliedly.

(*b*) Exception is taken in ground 4 to the admission of the plaintiff's testimony, over the objection that it was not the best evidence, that he had mailed to the defendant several times a statement of the account, showing that it was "for the full amount of the account,—$820.48." There was no proof as to the proper stamping, address, and deposit in the mails of the communications referred to, so as to authorize a presumption of their receipt by the defendant, and render such testimony of evidentiary value on the question of implied ratification by the defendant. See *Bankers Mutual Casualty Co.* v. *Peoples Bank,* 127 *Ga.* 326 (2), 327 (56 S. E. 429); *Burch* v. *Americus Grocery Co.,* 125 *Ga.* 153 (3), 158 (53 S. E. 1008); *Rawleigh Medical Co.* v. *Burney,* 22 *Ga. App.*

492 (1), 493 (96 S. E. 578); *Lowenstein* v. *Johnston, 23 Ga. App.* 261 (1) (98 S. E. 111). While this was not the ground of objection urged, the evidence was inadmissible under the particular exception presented, invoking the "best evidence" rule, in the absence of any proof that the original communications were unavailable. Moreover, there was no proof as to when the statements were sent, and if, as appears likely, they were sent long after the indebtedness was incurred, this could not of itself establish ratification. *Hill* v. *Render, 33 Ga. App.* 13 (5) (125 S. E. 79).

(*c*) On the defense set up by the amended plea that the plaintiff, to obtain the defendant's signature on the $820.48 note, misstated the amount of total previous indebtedness, by telling her that it included both the previous open account and four notes for $75 each, also included in this suit, the plaintiff denied having made such a statement. There was, however, testimony from the defendant and her daughter sufficient to raise an issue for the jury as to whether such a misrepresentation had been made, and as to whether the defendant had been in fact misled thereby by reason of her illness and long enfeebled condition and the consequent inability to know for herself the correct amount of indebtedness. The court charged as to other contentions of the parties and other issues; but failed to charge with reference to this contention and issue raised by the amended plea, as complained of in ground 9. Even in the absence of a written request, the failure to charge thereon was error.

(*d*) To the question, "You stated Mrs. Brazell (defendant) sent for the goods herself, how do you know that?" the plaintiff answered, "She sent orders part of the time," that those orders were "in writing," and that he had some of the orders with him, but not all. The court admitted this evidence over the objection that the orders themselves were the best evidence as to their nature and contents. While the orders were not introduced, it later appeared from the testimony that they related solely to the portion of the account contracted after the death of the husband, as to which there was no dispute. Even though the testimony excepted to in the 5th ground was inadmissible, the admission was harmless to the defendant.

(*e*) In ground 8 exception is taken to the admission of testimony, over the objection that there was higher and better evidence

of the title, that "this property [referring to the land and place where movant lived] was all in your mother's name." It was shown, without objection, that the defendant had bought this land under a bond for title. The defendant herself testified, "What little property there was was all in my name; my husband didn't have any property at all;" and there was other evidence of the same nature. The exception is therefore without merit.

(*f*)  Exception is taken, in ground 11, to the failure to charge (without a written request) upon a material issue in the case, that "if the evidence showed that a portion of the account for which the said note for $820.48 was given was for necessaries and supplies furnished to or obtained by the family of movant's deceased husband while her said husband was in life, the presumption  .   . would be that movant's husband was liable alone for the debt so contracted, and that the burden would then be upon the plaintiff to show that defendant, by special contract, made herself liable for the debt represented by said account." There is no merit in the particular ground of exception taken. It was not required, without a written request, that the jury be instructed as to shifts in the burden of proof or of proceeding as developed under the evidence. *Jackson* v. *Merritt Hardware Co.*, 26 *Ga. App.* 748 (107 S. E. 394). The charge of the court upon the ground of defense with reference to want of consideration for the portion of the note representing the account made by the husband fully covered the rule with reference to the primary liability of the husband for necessaries, in the absence of a contract by the wife. While it did not cover the rules as stated in the headnotes, there was no exception thereto. Moreover, the court charged that if the entire note represented the defendant's own indebtedness, she would be liable for the full amount, but that if any part was given in settlement of her husband's previous debt, she would not be liable for such part. While, as above discussed, the evidence failed to show facts and circumstances under which the defendant might have been held liable, even though the jury might have found that part of the note was a settlement of her husband's previous debt, the instruction in effect that under no circumstances would she be liable for such a part was more liberal to the defendant than the law required.

(*g*)  The court charged as follows: "Now, there is some con-

tention, 1 don't think it is in the pleadings, but made to the jury, as to the statute of limitations; and I charge you that the statute of limitations runs against an open account in four years, but it does not begin to run so long as there are debits and credits, and the fact that an account is fifteen years old would not mean that the account was out of date, provided there were debits and credits appearing on the account, and I charge you, as a general rule, an open account does not run out of date and the statute does not begin to run so long as there are debits and credits." Exception is taken in the 13th ground to this excerpt, because under the evidence the portion of the account contracted before the death of the husband, and which represented the larger part of the $820.48 note, was a simple open account, and not a mutual account, and the reference to the statute of limitations was erroneous; and because the pleadings raised no issue as to the statute of limitations, "the only reference to it being made by movant's counsel in his argument to the jury as to the probability of movant signing said note for $820.48, if she had known that said note was intended as a note not only for the debt in part of her husband, but also for a debt barred by the statute of limitations;" and because the charge was "calculated to impress the jury with the belief that such a charge was an expression, an argument by the court, to refute the said argument made by movant's counsel to the jury, and it was thus calculated to unduly prejudice the minds of the jury against movant's cause." The undisputed evidence showed that as to all of the note executed in 1922 except a $66.98 balance, the indebtedness was contracted on open account before the husband's death in 1915, and that the entire account had been running since 1905. The evidence failed to show the dates on which the various items since 1915 up to the signing of the note were contracted. But there was no proof as to any indebtedness ever having been owed by the plaintiff creditor either to the husband or to the wife. The statute of limitations bars actions on open account four years "after the right of action accrues." Civil Code (1910), § 4362. "In order to make such a mutual account as will prevent the statute of limitations from beginning to run except from the date of the last item thereof, there must be an indebtedness on both sides. Mere entries of credits of partial payments are not sufficient." Civil Code, § 4363; *Howard* v. *Blanchard,* 29 *Ga. App.*

32

469 (116 S. E. 33). Mere partial payments of an existing in-
debtedness, and entries of credit by a creditor on such an open
account, do not constitute a mutual account which will prevent the
statute from running, and a charge applying the mutual accounts
statute in a case merely of open account has been held error.
*Brock* v. *Wildey,* 125 *Ga.* 82 (1) ; *Ford* v. *Clark,* 72 *Ga.* 760; *Liseur*
v. *Hitson,* 95 *Ga.* 527; *Mobley* v. *Pendergrast,* 8 *Ga. App.* 565
(1, 2) (70 S. E. 18).

"A strong moral obligation," under the statute, is merely
a "good consideration," and not a "valuable" one such as will
support an executory obligation. Civil Code, § 4243. While a
new promise when in writing, "either in the party's own hand-
writing or subscribed by him or some one authorized · by him"
(Civil Code, § 4383), "revives or extends the original liability, it
does not create a new one." Civil Code, § 4386. Construing
these statutes, the Supreme Court has held that a new promise
to pay a debt barred by the statute of limitations requires no
additional consideration in order to constitute an effective revival
of the original debt. *Pittman* v. *Elder,* 76 *Ga.* 371; *Comer* v.
*Allen,* 72 *Ga.* 1 (4), 14, 15. "The old debt by virtue of the new
promise is revived and the remedy thereon restored." *Shumate* v.
*Ryan,* 127 *Ga.* 118, 119 (56 S. E. 103). See also *Turner* v.
*Elliott,* 127 *Ga.* 338, 341 (56 S. E. 434) ; *Small* v. *Jones,* 138 *Ga.*
521, 523 (75 S. E. 605) ; *Ross* v. *Jordan,* 62 *Ga.* 299 (1) ; *Weath-*
*erly* v. *Hardman,* 68 *Ga.* 592; the latter cases construing the law
prior to the act of 1905 (p. 101), embodied in section 4384 of
the Civil Code (1910), which now makes enforceable a promise
to pay a debt discharged by bankruptcy, where made in writing.
But the Supreme Court likewise has held that an executory
"promise to pay a debt barred by the statute of limitations," made
voluntarily and without consideration, while it may effect a revival
of the original debt, is itself a nudum pactum and unenforceable.
*Monroe* v. *Martin,* 137 *Ga.* 262, 263 (73 S. E. 341) ; *Davis* v.
*Morgan,* 117 *Ga.* 504, 507 (43 S. E. 732). It is, however, the
general rule that the benefit of a statute of limitations is a
personal one, which the defendant may exercise, or waive by failing
to plead or claim at the proper time. *Strickland* v. *Jones,* 131 *Ga.*
409, 415 (62 S. E. 322) ; *Warren* v. *Powell,* 122 *Ga.* 4 (49 S. E.
730). It is also the rule that where the court states a contention,

not raised by the pleadings, but properly insisted upon and arising under evidence unobjected to in the course of the trial, and undertakes to state the legal principles applicable thereto, if the contention is vital, an inaccurate and prejudicial statement as to the law will be reversible error. But mere argument of counsel to the jury is not ordinarily to be designated as a contention of a party, and such a designation itself may in certain cases require a reversal. *Scott* v. *Valdosta R. Co.*, 13 *Ga. App.* 65 (78 S. E. 784).

The instant suit seeks to recover, not on the revived account, but on the note for $820.48, and the note itself showed no bar in whole or in part by the statute; nor was there any demurrer, plea, or motion setting up any bar by the statute, either of the note or of the original indebtedness, nor was there any plea or claim that the note was in whole or in part thus unenforceable as a nudum pactum. While the evidence showed that the account, unless revived by the note, except as to $66.98, would have been barred by the statute, and consequently as to the rest of the note the instrument itself was nudum pactum and unenforceable in itself (whatever might have been the effect of the new promise in reviving the original debt), the record fails to disclose that during the trial the defendant actually raised any such contentions, but on the other hand shows that the only point (raised during the argument to the jury) referring to the statute was indirectly in discussing the defense that the defendant would not have signed the note except for her mental incapacity, or for the plaintiff's misrepresentations as to the amount and nature of the indebtedness. Although the instructions set forth were incorrect both as to the time and effect of the statute of limitations, since there was no pleading or actual contention claiming either the bar of the statute or that the note itself was by reason thereof in whole or larger part a nudum pactum, the inaccuracy could not have been prejudicial to the defendant.

6. On the other issue raised under the defendant's pleadings and evidence, that the defendant's mental condition at the time of her signature of the note had been weakened by sickness, so that she was unable to understand the nature and consequences of her act, the evidence as to her mental condition was insufficient to show her contractual incapacity. On the issue as to whether the plaintiff had misstated the amount of the indebtedness, and whether the

new note included the previous notes, under conditions affecting the defendant's health and preventing her from knowing or understanding the true amount, the verdict for the plaintiff was authorized, although not demanded. The exception relating to the failure of the court to charge on that contention under the pleading and evidence has been previously treated.

(*a*)   Where the mental condition of a person is the subject of inquiry, "the general reputation of such a person as to sanity may illustrate that issue." *Goss* v. *State,* 14 *Ga. App.* 402 (1) (81 S. E. 247). Ground 6, excepting to the admission of evidence of this nature, was without merit.

(*b*)   The court did not err in excluding testimony, complained of in ground 7, sought to be elicited by the defendant from a physician, that, knowing her long sickness and confinement to her bed, and that she was "being dragged about the house in a chair," he would not "want her to attend to any business" for him.

(*c*)   Even had the evidence been sufficient to raise such an issue, the court fully and fairly instructed the jury as to the rules of law applicable to mental incapacity, and that one must have "enough of mind and reason for a clear and full understanding of the nature and consequences of his act in making a contract" in order to have "sufficient mental capacity to make a contract." The isolated extract from the charge on this subject, complained of in ground 10, if not wholly accurate within itself, was substantially correct when taken in connection with both the immediately preceding and following context, where the rule for determining the defendant's capacity under the evidence was elaborated and explained.

Under the rulings in the syllabus, for the reasons stated in the opinion, in the first paragraph and subdivisions (*a*), (*b*), and (*c*) thereunder, it was error to overrule the defendant's motion for a new trial. *Judgment reversed. Stephens and Bell, JJ., concur.*