15873, 15874.  LOVETT *v.* ALLEN; and *vice versa.*

STEPHENS, J.  1. Since a husband is liable for the funeral expenses of his wife, one who advances to him money to be used in payment of such expenses renders valuable service to the husband.

2. Where the person making such advancement is a brother of the dead wife, the advancement, if made voluntarily by him and without a request from the husband, is inferably a gift, and there does not arise as a matter of law any implied promise on the part of the husband to repay the money thus advanced.  But where the advancement is made at the request of the husband, either express or implied, although there is no express promise to repay, an implied promise by the husband to repay is inferable.  Civil Code (1910), § 5513.

3. In a suit against the husband by the brother of the deceased wife who made the advancement, to recover the money advanced, where there was evidence to the effect that, in response to a telegraphic message from the defendant in Portland, Oregon, to the plaintiff in Lovett, Florida, announcing the death of the defendant's wife, who was the plaintiff's sister, the plaintiff transmitted by telegraph the sum of $500 to the defendant, and in an accompanying telegraphic message instructed the defendant to ship the body of the deceased to Lovett, Florida, and that the defendant, out of the money thus advanced, paid the funeral expenses and the cost of the transportation of the body to Quitman, Georgia, an inference is not, as a matter of law, demanded that the defendant was liable for the advancement upon an implied promise to pay for beneficial services accepted by him from the plaintiff.

4. Evidence to the effect that the defendant stated to the plaintiff in the telegraphic message that the defendant was without funds to defray the funeral expenses of his wife authorizes, but does not as a matter of law demand, an inference that the defendant thereby requested of the plaintiff the advancement made, and that the plaintiff understood the defendant as making such request.

5. There being evidence to the effect that upon receipt by the plaintiff of the telegram from the defendant notifying the plaintiff of the death of the defendant's wife, the plaintiff transmitted by telegraph the sum of $500 to the defendant, advising the defendant to ship the body either to Lovett, Florida, or to Quitman, Georgia, for burial, the inference is authorized, though not as a matter of law demanded, that under such circumstances the plaintiff voluntarily made the advancement for the funeral expenses, including the transportation charges for the shipment of the body to either of the points named, and that the transaction being between near relatives, the money was thus advanced as a gift from the plaintiff to the defendant, and the latter was not liable therefor upon an implied promise to repay.

6. The cost of transporting a dead body to a point for burial is part of the funeral expenses.  Under the evidence it was a question of fact for determination by the jury as to whether the defendant husband impliedly promised to repay to the plaintiff the amount of the advancement used by him in defraying the transportation charges of the body of his de-

ceased wife, or whether the plaintiff voluntarily advanced the money for such purpose and thereby intended it as a gift to the defendant.

7. The charge of the court that a husband is liable for the funeral expenses of his wife was adjusted to the issues raised by the pleadings and the evidence.

8. The sole issue being whether the defendant was under an implied obligation to repay the advancement made by the plaintiff, or any part thereof, the charge of the court to the effect that a husband's liability for the funeral expenses of his wife is only for such expenses as are reasonable and in accordance with his financial circumstances was not adjusted to the pleadings and the evidence, and was therefore error.

9. It not appearing undisputed from the evidence and conclusive as a matter of law that the defendant had ever been under any obligation to repay the money advanced to him, a naked promise to pay the same afterwards made by him is not, as a matter of law, based upon any moral obligation. See, in this connection, *Davis* v. *Morgan*, 117 *Ga.* 504 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171); *Worth* v. *Daniel*, 1 *Ga. App.* 15, 17 (57 S. E. 898); Civil Code (1910), § 4243. It was error, therefore, for the trial judge to instruct the jury that if such a promise was afterwards made by the defendant, a verdict should be found for the plaintiff. The making of such a promise, however, is a circumstance to be considered by the jury in connection with the entire evidence as tending to establish an intent upon the part of the defendant, at the time of the receipt of the advancement, to repay to the plaintiff the money advanced, or as tending to establish an admission of liability therefor.

10. That part of the charge of the court illustrating liability upon an implied contract by reference to the liability of an infant or an insane person was not adjusted to the pleadings and the evidence. Such charge may not be a ground for reversal, but should nevertheless be omitted upon another trial.

11. The verdict rendered for the plaintiff not being as a matter of law demanded, the judgment awarding a new trial to the defendant, being the first grant of a new trial, is affirmed.

12. The court having erred as indicated in paragraphs 8 and 9 of this syllabus, the judgment on the cross-bill is reversed.

*Judgment affirmed on the main bill of exceptions; reversed on the cross-bill. Jenkins, P. J., and Bell, J., concur.*

DECIDED SEPTEMBER 16, 1925.

Attachment; from city court of Quitman—Judge Baum.   July 30, 1924.

The plaintiff testified: "I received a telegram from G. W. Allen . . stating that Mrs. Allen was dead and that he didn't have sufficient funds to comply with her wishes in preparing her body for burial. I replied to this telegram by telegraphing him $500 with which to defray the expenses. . . I sent the $500 to Mr. Allen in compliance with his telegram, and I expected him to repay me, and he did promise to repay me, when I was in Portland. . .

I could not tell you now the wording of that telegram. I advised him that I was sending $500 and for him to send the body to Lovett, Florida, or to comply with her request to ship the body back here. . . I wired Mr. Allen to bring the body home." The defendant testified: "I informed D. S. Lovett of her death by wiring him that Mamie died this morning, stating the time. In response to that telegram I got a wire from him that there was money coming on forward, and to make arrangements to ship the body home. I got a wire for $500. . . I did not ask Mr. Lovett to send me any money, and I did not borrow any money from Mr. Lovett at any time. . . My wife's body was sent to Lovett, Florida. I would have preferred to have buried my wife's body, if it had been left to my choice, in Portland, Oregon, but I shipped the body to Lovett, Florida, because her brother asked that request when he wired the $500. . . I did not include in my telegram to Mr. Lovett a request of what disposition to make of the body. Mr. Lovett's telegram to me stated that 'I am wiring $500. Have body shipped home to Lovett, Florida.' . . I did not ask her folks that I be permitted to bury the body in Portland, Oregon."

*Sam. T. Harrell,* for plaintiff. *Branch & Snow,* for defendant.