## JOHNSON'S ADM'R *vs.* SELLERS' ADM'R.

[ACTION FOR BREACH OF SPECIAL CONTRACT.]

1. *Construction of contract as to intention of parties.*—A party is not bound to perform an act which is not within the stipulations of the contract, merely because the other party expected and understood that he would perform it, and he knew that fact.
2. *Sufficiency of consideration.*—A promise by defendant to plaintiff, made to induce the latter to comply with an existing contract, between him and other persons, is without consideration.

APPEAL from the Circuit Court of Wilcox.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Lucius B. Johnson, (and afterwards revived in the name of his administrator,) against the administratrix of Calvin C. Sellers, deceased; and was founded on a verbal contract, which is thus described in the complaint: "In consideration that plaintiff and his wife would discontinue teaching school in the Dallas Academy at Selma, and leave and abandon all their inter-

18

est in said academy, and in the lot on which it was located, and all their then existing engagements in reference to teaching at that place, and would take charge as principals and teach in the Wilcox Female Institute at Camden, the defendant's testator then and there contracted and agreed to pay plaintiff the sum of twenty-five hundred dollars." The defendant pleaded, "in short by consent, the general issue, non-claim, failure of consideration, fraud, accord and satisfaction, and open account with statute of limitations of three years."

"On the trial," as the bill of exceptions states, "there was evidence tending to show that, on the 5th August, 1850, the trustees of the Camden Female Institute, in Wilcox county, Alabama, held a meeting, and elected L. B. Johnson and his wife principals of said institute. This fact was shown by the production of the official record of the proceedings of said trustees, which was shown to have been regularly kept by said trustees as a record of all their official proceedings, and which was put in evidence." This record contained the following resolutions and other statements, in relation to the appointment of said Johnson:

August 5, 1850. "*Resolved* by the board of trustees, that we elect L. B. Johnson and lady principals of the Wilcox Female Institute for the next scholastic year, commencing on the 15th September, 1850, and ending July 15th, 1851; *provided*, he secures to be paid at the end of the said scholastic year the sum of $700 for the rent of the institute building, (lot, steward's house, outhouses, and all,) to be paid to the said trustees. *Resolved*, further, that C. C. Sellers be appointed to communicate to Mr. Johnson and lady their appointment, and to solicit their acceptance, and to report to the next meeting of the board."

August 12, 1850. "The committee appointed to inform L. B. Johnson and his lady of their election as principals of the Wilcox Female Institute, reported progress, and asked for further time to complete his report; which was granted."

August 17, 185.. "Col. Seller [reported] L. B. John-

son, the elected principal of the institute, as being in town; whereupon Mr. Johnson was invited to come before the board. When Mr. Johnson appeared, Judge Bridges introduced the following resolution : ' *Resolved*, that, un-der the circumstances which surround us, this board agrees to let to the principal elect, L. B. Johnson, the use, occupation, &c., of the buildings, out-houses, &c., of the Wilcox Female Institute, during the coming scholastic year, free of rent, upon the express conditions, that he procure the requisite number of competent teachers, and furnish the same with suitable musical instruments, appa-ratus, globes, &c.; and that the rates of tuition are not to be above the rates of the Dallas Academy, as heretofore fixed, to be regulated by the trustees; the board at the institute not to be above the rates heretofore established, to be regulated also by the trustees.' Said resolution was adopted; upon which, Mr. Johnson accepted the election of principal of said institute."

" There was evidence tending to show, that a letter was written by Sellers to Johnson, shortly after the meeting on the 5th August, 1850, notifying him of the election of himself and his wife as principals of said institute at Cam-den; that Johnson then lived in Selma, and was there teaching school, at the Dallas Academy; but there was no proof that this letter ever reached Johnson. Soon afterwards, a man was sent from Camden to Selma for Johnson, and Johnson returned with him. On Johnson's arrival in Camden, a meeting of the trustees was called on the 17th August, 1850, as shown by the proceedings of the board. The defendant offered evidence tending to show, that the previous order of the trustees, electing Johnson and his wife as principals, was communicated to Johnson at said meeting; and that Johnson made a con-siderable speech in relation to the school, the favorable position of Camden, and the high qualities of his wife as a teacher, and spoke of her popularity as a teacher. There was, also, evidence tending to show that Johnson left Camden shortly afterwards, and did not return until some time in October, though it had been agreed that the school should commence about the middle of September;

that he came alone on his return, and did not bring his wife with him; that when this was objected to, he said that he did not understand that the contract bound him to bring her; that an interview took place soon afterwards between Johnson, Sellers, and others of the trustees, but it was not a meeting of the board of trustees; that a dispute arose between them at this interview, about Johnson's not having brought his wife,—he contending that he did not consider himself bound by the contract to bring her with him, and Sellers and the other trustees contending that he was bound to bring her, and that he had agreed to do so; that Johnson stated at this interview, that he had spent $5,000 in making improvements on the Dallas Academy, and had an interest in the building to that extent so long as he continued the school there—that he had been advised by his lawyer, that he would forfeit this right if he voluntarily abandoned the school there; and that he had offered to sell his interest in the academy to the trustees for $2,500, but they refused to give it; and that his wife was then teaching school there under a contract for $1,650 *per annum*. The evidence also tended to show, that Sellers then asked Johnson, 'Will you take $2,500 from us, and bring Mrs. Johnson with you to take charge of the school at Camden?' or, 'Will you take $2,500, and leave your interest at Selma, and bring Mrs. Johnson with you, and come and take charge of the school at Camden?' Johnson replied, that he would do so; and Sellers then said, that he would give him that sum; whereupon Johnson agreed to leave Selma, and bring his wife with him to Camden to teach.

"The proof further tended to show, that Sellers, on the next day after this interview, told another person (a witness) that the difficulty as to Mrs. Johnson's coming to Camden had been removed, and that he had agreed to give Johnson $2,500 to bring her with him to teach school at Camden. It further appeared, that Mr. and Mrs. Johnson did shortly afterwards come to Camden, and commenced teaching in the institute, and taught a flourishing and prosperous school there for several years: that Mrs. Johnson was a most excellent teacher, musician, and

disciplinarian, and was believed to be such by the trustees at the time of her election with her husband; and that Johnson was told, in the last interview between him and Sellers and others above mentioned, that the qualifications of his wife had influenced the board of trustees in their election."

There was some other evidence in the case, which, however, has no material bearing on the points here decided.

The court charged the jury, among other things,—

"1. That there were two contracts in this case, which it was necessary that they should construe; first the contract which the plaintiff claimed was made by Sellers; and, secondly, the contract which the defendant claimed was made between Johnson and the trustees."

"4. That if they were satisfied from the evidence that Johnson was elected as principal of the school, and accepted as principal; yet, if the trustees understood that his wife was to come with him, and he accepted the office knowing this understanding, then Johnson was bound by his contract to bring his wife with him."

"9. (That it was contended by the plaintiff, that even if they should find that Johnson was bound by his contract to bring his wife with him to teach the school, and refused to comply with his promise, and the promise of Sellers was made to induce him to comply with his contract, and did induce him to do so; still Sellers was bound by his agreement. And the court then told the jury, that the law on this point, which was denied by the defendant, was with the defendant."

"10. That if Johnson was bound, under his contract with the trustees, to bring his wife with him to teach in the school at Camden, and refused to comply with this contract; and Sellers thereu[pon], to induce him to comply with this contract, [promised to p]ay him $2,500; and that Johnson, on the [faith of this] promise, did c[ome and] teach with his wi[fe ... evi]dence that he [told his] wife that h[e ...] the contra[ct ...] void."

These charges, to which the plaintiff excepted, with other matters, are now assigned as error.

D. W. BAINE, with whom were WATTS, JUDGE & JACKSON, for the appellant.

No counsel appeared for the appellee.

WALKER, J.—The counsel for the appellant only contends, that the first, fourth, ninth, and tenth charges given, are erroneous ; and we will, therefore, confine our attention to them. Upon the first charge it is not necessary that we should pass, as the question made upon it will not probably again arise.

The court erred in giving the 4th charge. The contracting parties are not bound beyond the stipulations of the contract. One of the parties is not bound to perform an act, not within the stipulations of the contract, because it was understood by the other party that he would perform it, and he knew of that understanding. The effect of the charge was, to hold Johnson bound to bring his wife with him, although he did not contract to do so, because it was known to him that the trustees understood that he was to bring her with him to teach in the school. In the giving of that charge the court erred.—Sanford v. Howard, 29 Ala. 684.

[2.] The 9th and 10th charges assert the proposition, that if Johnson contracted to bring and associate his wife with him in teaching the school, and then refused to comply with that contract, a promise by Sellers to give him $2,500, in order to induce him to comply, would be without consideration. In our judgment, these charges are correct. Johnson, by his contract, was legally bound to bring his wife to teach in the school, if the contract was such as the charge supp no *right* to violate tract, and comured party in dam-
 terpose to compel
is ██ ██cause
use the law
an be suffi-
y commit a

trespass, for which the law would merely give an action to recover damages ; but it does not therefore follow, that he had a right to commit the trespass, being responsible for the damages, or that a promise made to induce him either to commit or not to commit it, would be valid. Renfro v. Heard, 14 Ala. 23.

If two parties make a contract, one of them may waive the performance of the contract by the other, and assume some new and additional obligation as the consideration of the performance by the other. Such obligation would be binding. Within this principle fall the cases of Stoudenmeier v. Williamson, 29 Ala. 558 ; Munroe v. Perkins, 9 Pick. 298 ; and Lattimore v. Harrison, 14 Johns. 330 ; also, Spangler v. Springer, 22 Penn. St. R. 454 ; Whiteside v. Jennings, 19 Ala. 784 ; Thomason v. Dill, 30 Ala. 444. Those cases rest upon the ground,. that it is competent for the parties to·a contract to modify or rescind it, or to waive their rights growing out of it as originally made, and engraft upon it new terms. (Here, while there is a subsisting contract with the trustees, and a subsisting obligation to perform it, the proposition of the appellant is, that a promise by a third party to induce its performance, or rather to prevent its breach, was supported by a valid consideration. We do not think the law so regards such a promise.

We deem it proper to remark, that the testimony found in the bill of exceptions does not conclusively show whether Johnson's contract was to bring his wife to teach in the school with him; and that that question of fact should be left to the determination of the jury upon the evidence. The court could not assume that the resolution for the election of Johnson as principal on the 17th August, 1850, contains all the terms of the contract. The question, what was the contract, must be left to the decision of the jury, upon that and the other evidence in the case.

The judgment of the court below is reversed, and the cause is remanded.