280 So.2d 93

**Frank L. HAWKINS**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION.**

**SC 55.**

Supreme Court of Alabama.

Feb. 22, 1973.

258

Holberg & Tully and Ralph G. Holberg, III, Mobile, for appellant.

David R. Coley, III, Mobile, for appellee.

FAULKNER, Justice.

Frank Hawkins decided to build a Holiday Inn on property bounded by Church, Monroe, Jackson, and Joachim Streets in a downtown urban renewal area of Mobile. He contracted with First Federal Savings and Loan Association for a loan of $500,-000, subject to several conditions, including the following:

"That an amount equal to 5% of the loan be deposited with the Association as a stand by [sic] fee for 12 months * * *. If such loan is not closed 12 months from date of acceptance, the entire fee will be forfeited."

In accordance with this provision, Hawkins paid $25,000 to First Federal. It is this sum which is now the subject of the litigation.

Upon trial, Hawkins testified as follows:

"Q. When did you first learn that it [the highway] probably would come either through, or close to the general vicinity down there?

"A. After I had gotten drawings prepared and made payments on the land and all that sort of thing, I read it in the newspaper. I did not go into that job blindly. I conferred with consulting engineers. They showed me a drawing showing that the highway would miss that property and would not go through there, and they later changed their mind and did take part of it, and in the meantime the whole thing was held up."

According to Hawkins' testimony, the City of Mobile, at the direction of the State Highway Department, refused to issue him a building permit because of the pending condemnation of all or part of his land. Later, when it became clear that only a small part of the tract was being taken, Hawkins received approval for a redesigned building, and construction commenced. However, in the meantime, the deadline embodied in the contract, which had already been extended once by agreement of the parties, expired. First Federal insisted that Hawkins had forfeited the $25,000 "stand by" fee by failing to close the loan within the agreed period. Hawkins brought an action to recover the money.

The cause was tried to a jury in the Circuit Court of Mobile County. At the close of the evidence plaintiff requested seventeen charges, of which sixteen were refused. A verdict was returned in favor of the defendant, First Federal. Plaintiff Hawkins now brings this appeal, arguing that denial of four of his requested charges, and his motion for a new trial, constituted reversible error.

All four of the charges in question relate to the issue of whether alleged impossibility of performance should excuse appellant Hawkins from his contractual obligations. All four were refused by the trial judge:

"PLAINTIFF'S CHARGE NO. 12. I charge you that the Plaintiff would be relieved of his obligation to perform his agreement with the Defendant if performance by the Plaintiff was rendered impossible by some action or authority of the State of Alabama. * * *

"PLAINTIFF'S CHARGE NO. 13. I charge you that the impossibility which will, or may, excuse the performance of a contract must consist in the nature of the thing to be done and not in the inability or incapacity of the obligor to do it. Impossibility, in this connection, does not mean an absolute inability, and is not limited to scientific or actual impossibility of performance, but must be given a reasonable and practical construction. When you are confronted with a situation involving impossibility of performance, the problem becomes one of determining whether the Defendant's actions placed a greatly increased burden upon the Plaintiff during the time for performance. * * *

"PLAINTIFF'S CHARGE NO. 14. I charge you that performance of a contract cannot be compelled where it would involve a violation of the law. * * *

"PLAINTIFF'S CHARGE NO. 15. I charge you that the Plaintiff would be relieved of his obligation to perform his agreement with the Defendant if performance by the Plaintiff was rendered impossible by some action or authority of the City of Mobile. * * *."

Charge No. 13 is improperly grouped with the others on appeal because it refers to impossibility caused by "Defendant's actions", not by governmental agencies. It is substantially the same as Plaintiff's Charge No. 11, relating to alleged alteration of contract terms by the defendant, which was given by the trial judge. The judge is empowered by statute to refuse redundant charges if the same rule of law was substantially and fairly given in another charge. Title 7, § 273, Code of Alabama 1940 (Recompiled 1958).

Whether Charges No's. 12, 14, and 15 are good depends fundamentally upon the extent to which impossibility, arising without fault of the obligee, is recognized by our law as a defense to breach of contract by the obligor. There appears to be a major division among the authorities on the issue.

On the one hand, there is the view requiring strict adherence to the terms of a contract, regardless of any circumstances arising later. This rationale was classically expressed in Paradine v. Jane, 82 Eng. Rep. 897 (K.B.1647):

"[W]here the law creates a duty or charge, and the party is disabled to perform it without any default in him * * * there the law will excuse him. As in the case of waste, if a house be destroyed by tempest, or by enemies, the lessee is excused. * * * but when the party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. And therefore if the lessee covenant to repair a house, though it be burnt by lightning, or thrown down by enemies, yet he ought to repair it."

In contrast, there is the view expressed by the Restatement of Contracts (1932), § 457:

"[W]here, after the formation of a contract facts that a promisor had no reason to anticipate, and for the occurrence of which he is not in contributing fault, render performance of the promise impossible, the duty of the promisor is discharged * * *."

The difference between the views is aptly put by Williston:

"The law must adopt either a strict rule which will require the parties, when they form a contract, to forsee its consequences as accurately as possible, though at the expense of serious hardship to one of them if unforseen circumstances render it impossible to perform his promise, or a rule giving an excuse under such circumstances. The early cases accepted the former alternative; the later cases tend to adopt the other." 6 Williston on Contracts, § 1931 (Rev.Ed.1938).

In Alabama, it is generally the strict rule that has been upheld by our decisions. As this Court stated in Lee v. Cochran, 157 Ala. 311, 313, 47 So. 581, 582 (1908):

"Where a contract is unambiguous, is plain in expression, we know of no cannon [sic] of construction that warrants an interpretation the only effect of which is to relieve a party to the contract from consequences deemed by him hard or unfair. Indeed, where the parties express without ambiguity their intention, of course, no court can alter the agreement, and no room for judicial construction is left. The contract * * * is plain, speaks a legal undertaking on the part of all parties thereto, and, if the

bargain is hard or unwise in any respect, the error in judgment is his or theirs, and, in the absence of fraud or other vitiating circumstances, cannot be relieved."

The same strict or literal view has been upheld in numerous other cases. Stone v. Dennis, 3 Port. 231 (1936); M'Gehee v. Hill, 4 Port. 170, 29 Am.Dec. 277 (1836); Marx v. Kilby Locomotive & Machine Works, 162 Ala. 295, 50 So. 136 (1909); Capital Fertilizer Co. v. Ashcraft-Wilkinson Co., 202 Ala. 92, 79 So. 484 (1918); Otinger v. Water Works and Sanitary Sewer Board, 278 Ala. 213, 177 So.2d 320 (1965). See Case Note, "Impossibility of Performance in Action for Breach of Contract", 15 Ala.L.Rev. 582 (1963). The Fifth Circuit has correctly interpreted our law in this area in City of Albertville, Ala. v. United States Fidelity & Guaranty Company, 272 F.2d 594 (1959).

However, this court has recognized an exception to the strict rule. In the words of Greil Brothers Co. v. Mabson, 179 Ala. 444, 450, 60 So. 876, 878 (1912):

"The general rule is that, where the performance of a contract becomes impossible subsequent to the making of same, the promisor is not thereby discharged. [Citation omitted.] But this rule has its exceptions, and these exceptions are where the performance becomes impossible by law, either by reason of a change in the law, or by some action or authority of the government. [Citations omitted.] It is generally held that, where the act or thing contracted to be done is subsequently made unlawful by an act of the Legislature, the promise is avoided. Likewise, where the performance depends upon the continued existence of a thing which is assumed as a basis of the agreement, the destruction of the thing by the enactment of a law terminates the obligation. [Citations omitted.]"

It is indeed with that branch of the impossibility problem relating to governmental action that we are now specifically concerned. The answer to the respective contentions so ably propounded by both counsel in this case is to be found within the scope of the doctrine of Greil Brothers Co. v. Mabson, supra.

In *Greil*, the plaintiff leased premises in the City of Montgomery to the defendant, "'for occupation as a bar, and not otherwise.'" Thereafter, on November 23, 1907, the General Assembly of Alabama enacted a prohibition law, making it unlawful to sell liquor. The defendant abandoned the premises, and refused to pay rent. The plaintiff brought an action to collect on rent notes, and had judgment.

On appeal, this court reversed, holding that the bar operator was excused from performance of his contract because such performance had been prohibited by the Legislature.

Without more, this holding would support the contentions of the appellant. However, the court discussed two additional cases, Burgett v. Loeb, 43 Ind.App. 657, 88 N.E. 346 (1909), and Houston Ice Co. v. Keenan, 99 Tex. 79, 88 S.W. 197 (1905). In *Burgett*, denial of a liquor license, which made it impossible for the defendant to sell liquor, was held no excuse for breaching a lease for a place to sell it. In *Keenan*, prohibition by local option election did not excuse performance by a lessee. This court cited both cases with approval. Commenting on *Burgett*, we said:

"[H]is inability to use the premises for the purpose for which they were rented did not arise from a change of the law, so as to prohibit the business, but resulted from the rejection of his application for a license, and [sic] which was a risk that he assumed. * * * *'Appellant did not discontinue his business because of a change in the law, but because of its application.'" (Emphasis supplied.) 179 Ala. at 452, 60 So. at 878.

Similarly, *Keenan*, supra, was approved with the following comment:

**262**

"[T]here was no change in the law making the performance impossible; that prohibition resulted from a local option election held under a law which was in existence when the lease was made; and that the lessee should have protected himself by a clause in the lease against a contingency then authorized by law. Here the pleas do not set up prohibition under an election held under a local option law existing when the lease was made, but an act of the Legislature passed after the lease was made. 179 Ala. at 453, 60 So. at 879.

 The distinction clearly established is between illegality created by change in the law subsequent to the contract, which serves as an excuse, and illegality due to an unfavorable exercise of discretion by governmental officials acting under existing law, which is no excuse.

 The record in this case does not disclose that the Building Commissioner was acting under any authority other than that vested in him by the Mobile Building Code, or that he did not have the authority to deny a permit as of the date of formation of the contract. Therefore, according to the doctrine of Greil Brothers v. Mabson, supra, the parties could have foreseen the possibility that a building permit would be denied and provided for that contingency in the terms of their contract.

Many cases in sister jurisdictions have endorsed the principle as stated by Corbin:

"Ordinarily, when one contracts to render a performance for which a government license or permit is required, it is his duty to get the license or permit so that he can perform. The risk of inability to obtain it is on him; and its refusal by the government is no defense in a suit for breach of his contract." 6 Corbin on Contracts, § 1347 (1962).

Among these cases are Security Sewage Equip. Co. v. McFerren, 14 Ohio St.2d 251,

237 N.E.2d 898 (1968); Smith v. Dixon, 238 Ark. 1018, 386 S.W.2d 244 (1965); Fischler v. Nicklin, 51 Wash.2d 518, 319 P.2d 1098 (1958); Hein v. Fox, 126 Mont. 514, 254 P.2d 1076 (1953); Shore Inv. Co. v. Hotel Trinidad, 158 Fla. 682, 29 So.2d 696 (1947); Burgett v. Loeb, supra.

In this view of the case it is not necessary to consider the technical defects assertedly present in the charges whose substantive merits are discussed in this opinion.

We hold that the charges requested by appellant were properly refused by the trial court. As a party binds himself, so shall he be bound.

The judgment of the trial court is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, and MADDOX, JJ., concur.