321 So.2d 186

**MOBILE TURNKEY HOUSING, INC., a corporation and Commercial Contractors, Inc., a corporation**

**v.**

**CEAFCO, INC., a corporation By and Through Max E. Miller, as its Trustee.**

**SC 470.**

Supreme Court of Alabama.

Sept. 18, 1975.

Rehearing Denied Nov. 6, 1975.

———◆———

Donald F. Pierce, G. Hamp Uzzelle, III, Mobile, for appellants.

Bert S. Nettles, Mobile, for appellee.

ALMON, Justice.*

* This case was originally assigned to a justice formerly on this court. It has been reassigned to the writer who has listened to the tape recordings of the oral argument.

Respondents appeal from an adverse decree in a suit by a subcontractor against the general contractor.

In late 1968 the Mobile Housing Authority, pursuant to a program sponsored by the Housing and Urban Development Office (HUD), began to solicit bids for a housing project to be built in Mobile. The contract for "Jesse Thomas Homes," as the development was called, was awarded to Mobile Turnkey Housing, Inc. (Turnkey). Turnkey was incorporated by Commercial Contractors, Inc. (Commercial) for the sole purpose of developing this project. The Mobile Housing Authority transferred title to the property to Turnkey. Turnkey contracted with Commercial to act as general contractor in the construction of the project. Commercial sub-contracted with Ceafco, Inc. (Ceafco), the complainant, to do the grading and site work on the project.

Ceafco encountered soil that could not be compacted to the required density, a situation which could only be corrected by bringing in large amounts of borrow fill. The trial court found that because of the encounter with bad sub-soil Ceafco ceased work on the project on May 15, 1969.

A meeting between representatives of Ceafco and Commercial was held on May 19, 1969, at which, according to the court's findings, Commercial orally agreed to bear this extra expense. (This oral promise was disputed by Commercial.) Ceafco went back to work and Commercial submitted a request to HUD for the extra cost—$110,715.00. The Atlanta office of HUD refused this request, but the work continued and the site work was completed about the first of January, 1970.

Throughout the summer payments for the work were made to Ceafco on a periodic basis. About once a month Ceafco received payment for the work they had completed up to that point. Each time Ceafco received payment they executed a "receipt and lien waiver" which stated that Ceafco waived and released any right they might have to file a lien against the prop-

erty for work done up to the last date of payment.

Ultimately the entire project was completed and the property was conveyed back to the Mobile Housing Board. Upon Commercial's refusal to reimburse Ceafco for the extra cost, Ceafco brought this suit.

As originally brought this lawsuit joined three respondents: Turnkey, Commercial and The Mobile Housing Board. However, Ceafco later amended its complaint to strike the Mobile Housing Board.

Ceafco's complaint, as later amended, bases a claim for relief on the oral agreement allegedly made between Ceafco and Commercial on May 19 and seeks to establish a lien in the amount of $110,715.00 on the property. After the commencement of the suit, but before the case went to trial, Caefco filed a petition for bankruptcy, and Ceafco is now maintaining this suit through its trustee.

In their answer, Commercial and Turnkey set out the following defenses to the complaint:

1. that Ceafco had received full payment under the contract of February 20, 1969;

2. that the "receipt and lien waiver" forms that Ceafco executed each time it received a periodic payment constituted waivers releasing Commercial from any liability on any claim connected with the project;

3. that the contract of February 20 stated that it was the entire agreement and any changes to it would have to be in writing (Art. XV of Contract), and that Commercial would not be liable for any extra work or material without written order (Art. IV of Contract); and

4. that, because Ceafco was already legally bound to provide borrow fill under the original contract of February 20, 1969, there was no consideration for any oral promise that might have been made between Ceafco and Commercial at the meeting of May 19.

The trial judge told the advisory jury in his charge that the doing of an act which you are already legally obligated to do is not sufficient consideration to support a contract. But an exception to this rule exists when due to unforeseen and extraordinary difficulties in performance the law must sustain the promise based upon standards of honesty and fair dealing.

Following these instructions the jury returned interrogatories to the effect that the new promise to pay by Commercial to Ceafco was supported by adequate consideration and there was not a valid release of all claims by Ceafco supported by adequate consideration.

In its final decree the court found as follows:

.    .    .    .    .    .

"*Sixth*: That while the Court considered and finds said written contract of February 20, 1969, to be unambiguous and required Ceafco to perform the work for which the new promise to pay additional money was made, it further finds that the respondent Commercial Contractors, Inc., made a new promise to Ceafco, Inc., to pay it additional money for the additional backfill material or borrow, and that such new promise was supported by a valid consideration; that the instant fact situation constitutes an exception to the general rule that a promise to pay additional compensation for the doing of that which the promise is already legally bound to do or perform is insufficient consideration for a valid and enforceable contract; that the instant fact situation properly comes within the 'unforeseeable difficulties exception'; that the Court recognizes the equities of the promise of respondent Commercial Contractors, Inc., to Ceafco, Inc. for additional compensation based upon what the Court finds to have been extraordinary and unforeseeable difficulties in the performance by Ceafco, Inc. of the said written contract of February 10, 1969; and that in the circumstances of this case the Court sustains the consideration for said new promise, based upon standards of honesty and fair dealing and affording adequate protection against unjust or coercive exactions. (E. g. *Pittsburgh Testing Laboratory v. Farnsworth & Chambers Co.*, C.C.A.10th, 251 F.2d 77).

.    .    .    .    .    .

"*Ninth*: The Court finds that the respondents were not guilty of any misrepresentations and therefore Ceafco is not entitled to any recovery on that aspect of its bill of complaint alleging legal fraud.

.    .    .    .    .    . "

Upon these findings, the court ordered that a judgment in the amount of $112,929.75 be entered against Commercial in favor of Ceafco, and decreed that a lien in this amount be placed upon monies owed by Turnkey to Commercial.

From this decree of the circuit court Commercial and Turnkey have appealed.

We view the dispositive issue to be whether the trial judge was in error in finding consideration for the new promise to pay additional money simultaneously with a finding that the original sub-contract covered the additional work encountered.

We set out certain portions of the sub-contract:

"Article I—Sub-contractor shall furnish all labor, materials and equipment and perform all work necessary to complete the following part or parts of the work of the General Contractor in all respects as is therein required of the Contractor, and all work incidental thereto, namely:

"I. Job requirements of site work including:

"(a) On-site excavation

"(b) Furnishing and placing borrow fill

.    .    .    .    .    .

"(m) It is agreed that this Subcontractor will be responsible for bringing the subgrade to within 1/10th of a foot, plus or minus, in all areas including areas under building (subgrade under buildings means 8 inches below finished floor elevation).

.    .    .    .    .    .

"II. It is agreed that time is of the essence in this contract and subcontractor agrees to pursue the work in accordance with General Contractor's schedule.

.    .    .    .    .    .

"Article II–(a) Contractor shall have the same rights and privileges against the Sub-contractor herein as the Owner in the General Contract has against Contractor.

(b) Sub-contractor acknowledges that he has read the General Contract and all plans and specifications and is familiar therewith and agrees to comply with and perform all provisions thereof applicable to the work to be performed by Sub-contractor.

"EXHIBIT A

"VI. It is agreed and understood that this is a lump sum contract for job requirements as identified above. *Subcontractor acknowledges that he has visited the site and apprised himself of all conditions whether showing plans and specifications or not, including latent subsurface conditions, and agrees that the lump sum price set forth herein will be compensation in full on work performed by him regardless of any conditions that may be encountered in the execution of the contract.*

.    .    .    .    .    .

"(*Exhibit A*) (Continuation from Page 1) "Exception is made to para. VI above in that sub-contractor will paid [sic] .65 (Sixty-five cents) per cubic yard if any undercutting is required *as a result of unsatisfactory material below the surface.* Contractor will determine when undercutting is required and no undercutting will be performed without written notice from contractor." (Emphasis ours).

It is manifestly clear from the court's findings and the provisions of the contract set forth that Ceafco contracted to do the work regardless of any soil conditions that might be encountered. Further, the evidence tends to show that the provision of the contract which provided for the payment of an additional sixty-five cents per cubic yard for undercutting required as a result of unsatisfactory material below the surface was negotiated by the parties to provide for the very contingency which is the subject of this litigation.

The alleged "unforeseeable consequences" can hardly be termed as such when the contract in unambiguous terms provided for just such a contingency.

The well reasoned case of *Shriner v. Craft,* 166 Ala. 146, 51 So. 884 (1910), dealt with this problem and concluded by saying:

"It is manifest that, in order for there to be a mutual assent, there must be something to be assented and agreed to on each side. Where the parties agreed to rescind the contract, each one gives up the provisions for his benefit, the mutual assent is complete, and the parties are then competent to make any new contract that may suit them. Where one piece of work is substituted for another, the contractor is released from doing one, in consideration that he will do the other. But where one party refuses to do the work, which his contract requires him to do, or even threatens to abandon the work, unless he is paid more, and the other promises to pay more, the original contract still remaining subsisting, we consider it merely a promise to pay for what he was already obliged to do, and a

nudum pactum; consequently there was no error in sustaining demurrers and striking pleas, as set out in assignments Nos. 6 to 16, inclusive."

This rule was further elaborated on in *McDonough v. Saunders*, 201 Ala. 321, 326, 78 So. 160, 165. (1917):

" . . . It conclusively appears that the change or alteration of the contract was a mere bonus required or demanded by Aldrich and Towers to perform their valid contract as to which they were then required by law to perform. No benefit whatever could or was intended to accrue to complainant or his associates by the change, nor any detriment to Aldrich and Towers. It was purely a bonus to them to perform their part of a valid contract. Such agreements or modifications of existing contracts are absolutely void. When by an amended or modified contract a party does only that which he was theretofore obligated to do by the original contract, he cannot legally demand additional compensation, or other obligations of the other party, as an inducement or reward for performing his part. If the other party promise to pay him more, or to further obligate himself to induce performance of that only as to which the party was originally bound to perform, the promise is a mere nudum pactum, and courts will not lend their aid to enforce such modifications or promises for additional compensation or further obligations so promised. Such is the well-settled doctrine of this court. *Shriner v. Craft*, 166 Ala. 146, 51 South. 884, 28 L.R.A. (N.S.) 450, 139 Am.St.Rep. 19; *Montgomery Co. v. Farley Bank*, 200 Ala. 170, 75 So. 918.

. . .

"The true reason for the doctrine is well stated by the Supreme Court of Minnesota as follows:

" 'Where the refusal to perform and the promise to pay extra compensation for the performance of the contract are one transaction, and there are no exceptional circumstances making it equitable that an increased compensation should be demanded and paid, no amount of astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. * * * Surely it would be a travesty on justice to hold that the parties so making the promise for extra pay were estopped from asserting that the promise was without consideration. A party cannot lay the foundation of an estoppel by his own wrong,' where the promise is simply a repetition of a subsisting legal promise. 'There can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract. * * * The promise cannot be legally enforced, although the other party has completed his contract in reliance upon it.' *King v. Railroad Co.*, 61 Minn. 482, 63 N.W. 1105; *Scott v. Rawls*, 159 Ala. 399, 48 So. 710; *Alaska Packers' Ass'n v. Domenico*, 117 F. 99, 54 C.C.A. 485 (C.C. of App. Ninth Circuit 1910); *Davis & Co. v. Morgan*, 117 Ga. 504, 43 S.E. 732, 61 L.R.A. 148, 97 Am.St.Rep. 171 (1903); *Esterly Machine Co. v. Pringle*, 41 Neb. 265, 59 N.W. 804 (1894)."

1 S. Williston, A Treatise on the Law of Contracts, § 130 (3d ed. 1957) provides:

"§ 130. *Promise to Perform or Performance of Any Obligation Previously Existing under Contract with Promisee.* Where A and B have entered into a bilateral agreement, it not infrequently happens that one of the parties, becoming dissatisfied with the contract, refuses

to perform or to continue performance unless a larger compensation than that provided in the original agreement is promised him. Especially common is the situation where a builder or contractor undertakes work in return for a promised price and afterwards, finding the contract unprofitable, refuses to fulfill his agreement but is induced to fulfill it by the promise of added compensation.

" 'What we hold is that when a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as *nudum pactum*, and will not lend its process to aid in the wrong.' "

See also *Little v. Reddit*, 264 Ala. 371, 88 So.2d 354 (1956) and *Hawkins v. First Federal Savings and Loan Ass'n*, 291 Ala. 257, 280 So.2d 93 (1973).

Admittedly there was evidence that Commercial furnished Ceafco with a soil test which indicated that there were no unsuitable soil conditions at the worksite. This matter was submitted to the advisory jury which found no fraud or misrepresentation. The trial court reached the same conclusion.

The principle of law which we follow seems on occasion to be rather harsh. Yet to hold otherwise would permit one party to a valid and unambiguous contract to use his failure of performance as a coercive force to extract a higher price than was originally contracted for.

In view of our holding, we do not find it necessary to reach other assignments of error.

The decree is due to be reversed and the cause remanded.

Reversed and remanded.

All the Justices concur.