### Bert D. GARRETT, Plaintiff,

v.

### David MATHEWS, Individually and as President of the University of Alabama at Tuscaloosa, the University of Alabama, John A. Caddell, Winton M. Blount, Ehney A. Camp, Jr., Samuel Earle G. Hobbs, Daniel T. McCall, Jr., John T. Oliver, Jr., Yetta G. Samford, Jr., Ernest G. Williams, Individually and as members of the University of Alabama Board of Trustees, Defendants.

### Civ. A. No. 78–G–0723–W.

United States District Court,
N. D. Alabama, W. D.

June 1, 1979.

Jack Drake, Drake & Pierce, University, Ala., for plaintiff.

Paul E. Skidmore, University, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This action was brought by a tenured assistant professor against the University of Alabama at Tuscaloosa, its president, and its board of trustees. Plaintiff alleges that the procedures resulting in his dismissal from the University denied him due process of law and violated his employment contract. The parties filed a stipulation of facts, eliminating the need for a trial on the merits. Jurisdiction is properly laid under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4).

Plaintiff has a Ph.D. degree in mathematics from the University of Texas. He was hired by the University of Alabama for its mathematics department in 1968 and was awarded tenure in 1971.

In 1973, Dr. Charles Hobby became chairman of the mathematics department and plaintiff's boss. Shortly thereafter, friction developed between plaintiff and Hobby. Hobby is alleged to have launched a campaign to fire Garrett, and the record reveals that Dr. Hobby did several things and made several statements that would be consistent with such a plan. The court, however, deems it unnecessary to make a finding on that issue.

On September 27, 1974, Garrett, Hobby, Professor Robert Plunkett, and Professor Jack Clarke met in Hobby's office. Hobby and Garrett agreed that if Garrett would do certain things by certain dates, then Hobby would treat Garrett in a professional manner and would not pursue charges of alleged misconduct occurring prior to the meeting. Hobby and Garrett each accuse the other of breaching the agreement. The court, again, deems it unnecessary to make a finding on that issue.

On March 21, 1975, Academic Vice-President Howard Gundy directed Dean Douglas Jones to assemble a hearing committee and give Dr. Hobby permission to file charges against Dr. Garrett. Hobby then charged plaintiff with failing to cover required course material, refusing to assign proper grades, refusing to comply timely with Hobby's instructions, failing to supply a list of publications as Hobby requested, ignoring and failing to open mail from Hobby, telling Hobby over the telephone that he had nothing to say to Hobby, failing to attend meetings and failing to post and keep office hours.

Hobby charged that these activities constituted insubordination and dereliction of duty, and sought plaintiff's termination under Section 9 of the 1972 Faculty Handbook, at page 30. That section provides that a tenured teacher may be discharged for cause after a hearing.

After about 40 hours of testimony, the hearing committee found proven the charges of failing to supply a list of publications, failing to open mail from Dr. Hobby, and failing to post and keep office hours. Though it found that these actions constituted insubordination and dereliction of duty, the committee found that plaintiff's offenses were not serious enough to warrant dismissal. The committee recommended revocation of plaintiff's tenure, deeming such a recommendation to be within its inherent power. The committee recommended that plaintiff be considered for tenure once more after a year.

Dean Jones considered the committee's findings and recommendations and, in turn, recommended to Academic Vice-President Gundy that they be followed. Gundy, in turn, recommended to Dr. Richard Thigpen, who was Acting Chief Executive Officer in the president's absence, that the committee's recommendation be followed. Dr. Thigpen approved the recommendation, and Dr. Gundy wrote plaintiff a letter revoking his tenure and informing him that he could appeal that final institutional decision to the Board of Trustees.

Plaintiff appealed to the Board of Trustees, alleging that the president, under the 1972 Faculty Handbook, could decide either to fire or not to fire him, but could not merely revoke his tenure. The Board of Trustees, agreeing with plaintiff, held that the University did not have the power to revoke plaintiff's tenure, stating, however, that it would not oppose plaintiff's being

dismissed and rehired without tenure. The Board remanded the matter to the University administration for it to take appropriate action under the 1972 Faculty Handbook.

On remand, Dr. David Mathews, President of the University, reconvened the hearing committee, told them of the Board's decision, and asked for their recommendation. The committee found that the Board of Trustees ruled erroneously, and reiterated its original recommendation of tenure revocation. Dean Jones then recommended to Academic Vice-President Gundy that plaintiff be terminated. Associate Academic Vice-President Charley Scott, in turn, recommended to Dr. Mathews that plaintiff be terminated. Dr. Mathews approved that recommendation, and Dean Jones wrote plaintiff a letter terminating his employment at the end of the 1978–79 academic year. The Board, thereafter, notified plaintiff's lawyer that no further appeal was necessary to exhaust plaintiff's administrative remedies. Plaintiff then brought the present action.

■ Plaintiff seeks reinstatement of his rights to continued employment with tenure under several theories. His first theory is that the agreement between plaintiff and Hobby arising out of the September 27, 1974, meeting constituted a contract whereby if plaintiff would do certain things, then Hobby would not proceed against him. Under this theory, Hobby's pressing charges against Garrett would constitute a breach by the University of that contract. Even assuming pendent jurisdiction and Garrett's compliance with the agreement, however, the agreement was plainly without consideration and so not enforceable as a contract. Under the agreement, plaintiff was required to do no more than were other faculty members. Since plaintiff was to do no more than he was already obligated to do under his employment contract, he promised merely to perform pre-existing duties. That such duties are not consideration for a contract is basic hornbook law. *Johnson v. Sellers*, 33 Ala. 265 (1858); *Mobile Turnkey Housing, Inc. v. Ceafco, Inc.*, 294 Ala. 707,

321 So.2d 186 (1975). This theory is, therefore, unavailing.

■ Propounding his other theories, plaintiff asserts that the hearing procedure violated his rights under the due process clause of the fourteenth amendment and, therefore, his employment contract as well. Plaintiff argues that Dean Jones, who convened the hearing committee, was biased against him and that his bias violated the requirement that a tribunal in this type of proceeding have apparent impartiality. *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This argument fails in two respects. First, Dean Jones was not on the hearing committee itself and did not cast a vote on that body's findings of fact or recommendations. He was not, therefore, a "decision maker" or part of a "tribunal" within the meanings of the line of cases requiring apparent impartiality. Second, even if Dean Jones were a decision maker or part of the tribunal, plaintiff has not demonstrated his partiality. Standards for determining whether a decision maker is unconstitutionally biased are found in *Hortonville District v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976), and *Robison v. Wichita Falls and North Texas Com. Act. Corp.*, 507 F.2d 245 (5th Cir. 1975). Plaintiff has not shown that those standards were abridged.

■ Plaintiff contends, further, that the committee relied upon a finding that plaintiff neglected his responsibility to the public by not responding to a parent's letter in reaching its decision to recommend tenure revocation. Since plaintiff was not charged with neglect of responsibility to the public, plaintiff argues that the committee used an improper standard to reach its decision. Plaintiff has not shown, however, that the committee relied upon neglect of responsibility to the public to reach its decision, and the court finds, conversely, that the committee did not so rely. The committee found affirmatively that not responding to the parent's letter did not constitute insubordination. That finding shows that the

committee was aware of the issues and of its responsibility. The committee's comment that plaintiff's behavior constituted neglect of responsibility to the public is more accurately interpreted as a mere note in passing than a finding supporting the recommendation.

■ Plaintiff next charges that the committee failed to find facts specifically as required by *Goldberg v. Kelly, supra.* That case requires an administrative body to reach its decision on the basis of legal rules and evidence adduced at a hearing. The Supreme Court held that the decision maker should state the reasons for its determination and the evidence relied upon to demonstrate compliance with that mandate. *Jarecha v. Immigration and Naturalization Service*, 417 F.2d 220 (5th Cir. 1969), indicates that the requirement of factual findings is met if the written decision of the hearing panel or the record of the hearing sets out clearly the grounds for its action so that appellate bodies and reviewing courts are able to ascertain whether the decision is arbitrary, capricious, or not supported by the reasonable, substantial, and probative evidence on the record considered as a whole. *Aberdeen and Rockfish Railroad Company v. United States*, 565 F.2d 327 (5th Cir. 1977), is substantially to the same effect. Of the charges the committee found proven, plaintiff admitted failing to supply a list of publications, refusing to open mail from Dr. Hobby, and knowing that his office door did not display his office hours. Further, the grounds for the committee's decision are abundantly clear from the hearing record and the committee's findings. There was no denial of due process in the committee's statement of the bases of its decision.

■ Plaintiff next contends that the facts found by the committee do not constitute adequate cause for dismissal. The committee found that plaintiff's failure to comply with a reasonable request of a superior to supply a list of publications was insubordination and dereliction of duty. The court agrees. Plaintiff's failure to open the mail from his superior was even a more odious indiscretion. Though, as plaintiff alleges, supplying a list of publications and opening mail may be nowhere written as job requirements, the court notes that not showing up for class naked is not a written job requirement either. Some things go without saying. Complying with reasonable requests from superiors and opening mail from superiors are among them. These offenses clearly could be such insubordination and dereliction of duty as to indicate dismissal.

■ Posting and keeping office hours were required by the Dean. Though the evidence was in dispute, plaintiff admitted not reposting office hours after they were torn down. The court cannot conclude that the committee's findings regarding plaintiff's failure to post and keep office hours and its character as insubordination and dereliction of duty were so unfounded as to constitute a denial of due process.

The finding that the proven charges constituted adequate cause for dismissal is supported by substantial evidence and will not be overturned on this ground. *Toups v. Authement*, 496 F.2d 700 (5th Cir. 1974).

■ Plaintiff goes on to assert that both the statement of charges and the adequate cause standard of the Faculty Handbook are so vague as to violate due process. The term "adequate cause," however, is no more vague than the variations of the term "for cause" approved in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Ferguson v. Thomas, supra*; and *Kilpatrick v. Wright*, 437 F.Supp. 397 (M.D. Ala.1977).

■ *Ferguson* holds that charges are specific enough to pass constitutional muster if they advise the accused of the causes of his termination in sufficient detail to enable him fairly to show any error that may exist. Dr. Garrett timely received a statement of charges enumerating names of witnesses and the other evidence to be relied upon, and specifying the acts to be relied upon in great detail. Neither the statement of charges nor the adequate cause standard are unconstitutionally vague.

**600**

Plaintiff and defendants all contend that the faculty hearing committee was without power to recommend revocation of plaintiff's tenure and that the President was without power to implement the recommendation. Plaintiff makes the argument to support his position that he should be retained with tenure. Defendants make the argument to support their position that the Board of Trustees properly remanded the matter to the University administration and that plaintiff, properly terminated, should stay that way. This court, however, is not bound by the parties' agreements of law, nor by agreements of fact which are contrary to facts disclosed by the record. *Mead's Bakery, Inc. v. C.I.R.*, 364 F.2d 101 (5th Cir. 1966). The court finds that the hearing committee had the power to recommend tenure revocation and that the Chief Executive Officer had the power to implement that recommendation.

The Board of Trustees' holding that the President was without power to revoke plaintiff's tenure was erroneous and, so, a denial of due process. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Silverthorne v. Laird*, 460 F.2d 1175 (5th Cir. 1972); *American Federation of Government Employees, Local 1858 v. Callaway*, 398 F.Supp. 176 (N.D.Ala.1975). The appropriate remedy is to place the parties where they would have been had the denial of due process not occurred. The court will, then, under the procedure mandated by *Ferguson*, order the Board of Trustees to rescind its resolution remanding the matter to the University administration and to order the University administration to retain plaintiff in its employ without tenure for one more year, after which time he will be eligible for tenure as any other faculty member in his position.

On April 8, 1972, the Board of Trustees passed the following resolution:

> BE IT RESOLVED by the Board of Trustees of the University of Alabama that the presidents of the three institutions be, and they hereby are, authorized to handle matters of tenure, promotion, dismissal and academic freedom with regard to faculty and staff members in their particular institutions.

The President, therefore, has the power to do as he will with faculty tenure, subject to constitutional limitations.

The parties argue that the University was without power to revoke plaintiff's tenure because the Faculty Handbook of 1972 does not provide for such a penalty. The old saw, *inclusio unius est exclusio alterius*, however, does not apply here. The only discipline dealt with by the Faculty Handbook is termination. That document neither permits nor prohibits tenure revocation. The handbook is not on its face so complete in other respects as to create the presumption that the omission of tenure revocation was intentional. The President had the power to revoke tenure, and that power was not relinquished in the Faculty Handbook.

The hearing plaintiff received satisfied *Ferguson's* requirements. Plaintiff was advised of the causes for his proposed termination in sufficient detail to enable him fairly to show any error that may have existed, he was advised of the names and the nature of the testimony of witnesses against him, he was within a reasonable time accorded a meaningful opportunity to be heard in his defense, and the hearing tribunal possessed academic expertise and was apparently impartial toward the charges.

Plaintiff has not shown that he was prejudiced by not receiving notice that the hearing committee might recommend mere tenure revocation rather than outright dismissal. After the committee made its recommendation to the dean, plaintiff's counsel's only substantial arguments concerned the legal propriety of tenure revocation as opposed to outright dismissal or imposition of no sanction at all.

Termination of plaintiff's employment would necessarily have included the stripping of his tenure. Plaintiff defended against both, winning the termination issue and losing the tenure issue. It affirmatively appears from all the circumstances that

plaintiff's lack of notice that the committee could recommend mere tenure revocation did not prejudice him so as to constitute a denial of due process. The procedure followed complied with fundamental principles of fair play. *See, e. g., F.C.C. v. Pottsville Broadcasting Company*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *U. S. v. Farias*, 488 F.2d 852 (5th Cir. 1974); *Hunt v. Rodriguez*, 462 F.2d 659 (5th Cir. 1972); *Arthur Murray Studio v. F.T.C.*, 458 F.2d 622 (5th Cir. 1972); *Intercontinental Industries, Inc. v. American Stock Exchange*, 452 F.2d 935 (5th Cir. 1971); *Russell-Newman Mfg. Co. v. N.L.R.B.*, 370 F.2d 980 (5th Cir. 1966); *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964). The Board of Trustees' decision was, therefore, legally incorrect and constituted a denial of due process.

Alternatively, the court holds that increasing the penalty after remand from tenure revocation to termination constituted a denial of due process. Principles of due process born of criminal matters often apply to civil litigation where important rights are involved. *Lee v. Habib*, 137 U.S. App.D.C. 403, 424 F.2d 891 (1970). Courts have repeatedly held that increasing a criminal sanction after a defendant seeks review, in the absence of extenuating circumstances, constitutes a denial of due process. *United States v. Coke*, 404 F.2d 836 (2d Cir. 1968); *Miracle v. Estelle*, 592 F.2d 1269 (5th Cir. 1979). Discipline for cause is a highly punitive matter. To increase plaintiff's punishment after his assertion of what he believed to be his constitutional rights would be a denial of due process. The appropriate remedy is, again, to place the parties where they would have been had the due process violation not occurred, by ordering plaintiff's continued employment without tenure.