**Jason C. YU, Plaintiff–Appellant,**

v.

**Chase N. PETERSON, President, University of Utah; Louis H. Callister, Member, Institutional Council, University of Utah; Cleone P. Eccles, Member, Institutional Council, University of Utah; Emanuel A. Floor, Member, Institutional Council, University of Utah; Molonai T. Hola, Member, Institutional Council, University of Utah; James S. Jardine, Member, Institutional Council, University of Utah; Leonard J. Lewis, Member, Institutional Council, University of Utah; Stephen B. Nebeker, Member, Institutional Council, University of Utah; Nancy K. Pace, Member, Institutional Council, University of Utah; Reed Searle, Member, Institutional Council, University of Utah; Nicholas S. Vidalakis, Member, Institutional Council, University of Utah, Defendants–Appellees.**

**No. 91–4096.**

United States Court of Appeals, Tenth Circuit.

Dec. 30, 1993.

Craig S. Cook, Salt Lake City, UT, for plaintiff-appellant.

R. Paul Van Dam, Utah Atty. Gen. and Brent A. Burnett, Asst. Atty. Gen., for defendants-appellees.

Before EBEL, Circuit Judge, HOLLOWAY, Senior Circuit Judge and H. DALE COOK, Senior District Judge.*

H. DALE COOK, Senior District Judge.

Dr. Jason C. Yu brought this action pursuant to 42 U.S.C. § 1983 against the president of the University of Utah and members of the University's Institutional Council. Dr. Yu was a tenured professor at the University of Utah in the College of Engineering. Prior to acquiring that position, he was a tenured full professor of civil engineering at Virginia Polytechnic Institute and State University.

In September, 1986, Dr. Yu became engaged in the University of Utah's internal grievance process when the Department of Engineering at the university filed a formal petition seeking sanctions against him. The petition alleged that Dr. Yu had violated the university's Code of Faculty Responsibility. In May, 1987, a Petition for Dismissal for Cause was filed by the university against Dr. Yu. Fifteen separate acts were asserted as grounds for his termination.

In June, 1987, the Academic Freedom and Tenure Committee ("the Committee") held extensive hearings. The Committee was composed of a law professor who was chairman and six other university professors from various departments. At the hearings twelve of the fifteen charges were dismissed for lack of evidence. The three that remained were allegations of plagiarism.

The Committee found that Dr. Yu had plagiarized a joint research project by failing to give credit to his co-author. In addition, it found that he had plagiarized by representing and continuing to represent that two publications which were 90% prepared by two of his students at Virginia Polytechnic Institute were his own work. The Committee concluded that Dr. Yu should be suspended from employment for one year without pay. The university president concurred with this decision and issued an order of suspension in January, 1988.

In accordance with the university's grievance process Dr. Yu appealed the suspension order to the members of the Institutional Council. In March, 1988 the Institutional Council remanded the matter back to the Committee both to cure procedural defects and to allow the Committee to obtain further evidence relative to several specified issues.[1]

---

* Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

1. The Institutional Council ordered the Committee to:
   a. To give Dr. Yu the opportunity to cross examine Dr. Lall on the testimony given by Dr. Lall when Dr. Yu was not present.
   b. To give Dr. Yu the opportunity to introduce testimony proposed in a July 7, 1987 memorandum and to consider affidavits submitted in an Addendum of December 29, 1987.
   c. To give Dr. Yu the opportunity for cross examination with respect to telephone statements made during the hearing by Dean Andrade to the then Committee Chair, William Lockhart.
   d. To request further evidence on the issue of intimidation of students and clarification of whether the Committee finds such conduct to have occurred.

After the remand hearings, in March, 1989, the Committee recommended that Dr. Yu be dismissed from the University of Utah faculty permanently. The grounds for termination were the same plagiarism charges that initially caused the Committee to recommend suspension. In April, 1989, the university president affirmed the Committee's decision and ordered Dr. Yu's discharge. In May, 1989 Dr. Yu appealed this resolution to the Institutional Council. The Institutional Council affirmed the president's mandate and ordered his immediate dismissal.

In August, 1991, Dr. Yu filed suit in the United States District Court for the District of Utah. He sought a declaratory judgment that his termination was unconstitutional. He moved for summary judgment asserting that there were procedural errors in the trial before the Committee and that there was a lack of evidence to support the Committee's conclusion that he should be discharged.

■ The court found that the Committee's procedures did not deprive Dr. Yu of due process.[2] It further determined that there was ample evidence to support the charges of plagiarism and that termination was permissible under the university's regulations. The court dismissed the action *sua sponte*.[3] Dr. Yu appeals the district court's dismissal of his action arguing that he was denied both procedural and substantive due process by the Committee.

e. (1) To request the Committee's written opinion or further information on the elements of the standard for plagiarism employed, on how the elements were met, on whether the standard was sufficiently clear to give adequate notice to faculty members with respect to its application particularly to co-authored work, and on whether Dr. Yu knowingly violated that standard; and (2) To request the Committee's advice on whether it would have found a plagiarism violation and imposed the same penalty, in the absence of consideration of a VPI incident that antedated Dr. Yu's employment at the University.

f. To permit the Committee to receive any further evidence it might deem necessary in light of receiving evidence under the Council's requests 1–5.b. (Remand Decision by the 1988 Academic Freedom Tenure Committee, University of Utah at 2–3).

**2.** After a special hearing on this issue the district court ruled from the bench, denying Dr. Yu's motion for summary judgment.

Our review of the trial court's grant or denial of summary judgment is *de novo*. *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir.1990). Therefore, in evaluating the summary judgment motion, we apply the same legal standard employed by the district court which is set out in Rule 56(c) of the Federal Rules of Civil Procedure. *Id.* If "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law" then summary judgment is appropriate. Fed.R.Civ.P. 56(c).

> "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Dr. Yu argues that the university denied him substantive due process in that the Committee's conclusion that he plagiarized was not based upon substantial evidence. Our independent evaluation of the record before the Committee and our examination of the Committee's reasoned remand decision convince us that the Committee's conclusion that Dr. Yu plagiarized is supported by substantial evidence.

**3.** "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment sua sponte." *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1009 n. 1 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). In this case the defendants' motion for summary judgment was untimely. However, failure to file a timely summary judgment motion does not prevent the court from granting summary judgment for the defendants. "[I]f one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits, and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua sponte* grant summary judgment to the non-moving party." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982). (citations omitted).

Dr. Yu alleges that he was denied procedural due process because the regulation he was charged with violating is vague, an erroneous burden of proof was imposed upon him, and the composition of members of the Committee at the remand hearing was improper. We find no merit in any of these allegations.[4]

We find that Dr. Yu's final allegation of a denial of due process is the only claim that warrants review. Dr. Yu charges that at the conclusion of the remand hearings the Committee improperly increased the penalty which had formerly been imposed at the first Committee hearings. Dr. Yu relies on a case from the Northern District of Alabama for the proposition that increasing a penalty after remand from a less severe sanction to termination constitutes a denial of due process. *Garrett v. Mathews*, 474 F.Supp. 594, 601 (N.D.Ala.1979), *aff'd* 625 F.2d 658 (5th Cir.1980).

In a criminal case, the United States Supreme Court pronounced it a flagrant encroachment of the Fourteenth Amendment for a trial court to habitually impose a stricter sentence upon each reconvicted defendant for the specific purpose of penalizing him for his successful appeal. *North Carolina v. Pearce*, 395 U.S. 711, 723–24, 89 S.Ct. 2072, 2079–80, 23 L.Ed.2d 656 (1969). In *Pearce* the Supreme Court explained that when an initial conviction has been thrown out because of constitutional or nonconstitutional error "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy [is] . . . a violation of due process of law." *Id.* at 724, 89 S.Ct. at 2080 (footnote omitted).

" 'A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant.' A court is 'without right to . . . put a price on an appeal. A defendant's exercise of a right to appeal must be free and unfettered. . . . [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.' "

*Id.* (citations omitted).

In *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) the United States Supreme Court narrowed the holding of *Pearce*. In *McCullough* the defendant was convicted of murder. A jury imposed a twenty year prison term. The trial judge then granted the defendant's motion for a new trial. Three months later, with the same trial judge presiding, a jury retried and reconvicted the defendant. The defendant chose to have the judge sentence him. The judge fixed his sentence at 50 years.

The Supreme Court determined that a harsher sentence upon reconviction does not necessarily trigger a presumption of vindictiveness on the part of the sentencing authority. *Id.* at 138, 106 S.Ct. at 978. The facts of each case must be evaluated to ascertain whether it is probable that vindictiveness could have occurred. *Id.* If the facts do not warrant the presumption of vindictiveness the trial court need not justify a stiffer sentence. *Id.*

■ Here, we need not decide whether the *North Carolina v. Pearce* presumption should apply in a civil administrative proceeding. The record in this case not only reveals that Dr. Yu has failed to prove actual vindictiveness on the part of the Committee and the university president, but it is also adequate to rebut any presumption of vindictiveness if such a presumption did apply.

---

4. First, the regulation that Dr. Yu was found to have violated reads:

> A faculty member must not plagiarize or permit the appearance that he or she is the author of work done by others.

This rule clearly puts faculty members on notice of conduct that is prohibited with regard to writings and ideas.

Next, the Institutional Council found that the Committee was aware "that the charging party must prove by clear and convincing evidence that the faculty member violated applicable regulations." (University of Utah's Institutional Council's Decision at 5–6.) The Council concluded that the burden remained with the University and was never improperly shifted to Dr. Yu. *Id.* We find nothing to persuade us otherwise. Nothing in the record suggests that an erroneous burden of proof was imposed upon Dr. Yu.

Finally, Dr. Yu has failed to show any bias on the part of the members of the Committee caused by its composition.

Admittedly, in this record we do find a potential motive for vindictiveness. The Institutional Council, not the Committee, was the body that remanded the matter back to the Committee for further proceedings. The Committee could have felt vindictive toward Dr. Yu for appealing his case to the Institutional Council. The Committee could also have undertaken to exonerate itself. In addition, it is plausible that the Committee was motivated by an "institutional interest" in deterring meritless appeals. *McCullough*, 475 U.S. at 139, 106 S.Ct. at 979.

The Committee at both the initial and the remand proceedings was responsible for recommending Dr. Yu's sanction and the same university president was responsible for rejecting or sustaining that recommendation. Unlike the situation in *McCullough*, the sentencing authorities in the case at bar were essentially the same. It is true that four of the twelve members of the initial Committee were replaced by four new members prior to the remand proceedings. However, we find that because the majority of the Committee members remained intact and one of the former members served in an advisory capacity to the remand Committee, this fact is insignificant.

A review of the Committee's remand decision in this case reveals a subtle tone of annoyance with Dr. Yu. The Committee refers at length to his failure to produce documents that they had requested in a timely fashion and his violation of an order prohibiting ex parte communications with Committee members.

However, we find that reasonable grounds for a more severe penalty do affirmatively appear in the record. Substantial new evidence was proffered at the remand hearings. The majority of the evidence involved the proportion of Dr. Yu's contributions to the co-authored report. In the initial hearings the Committee determined that the co-authored report was essentially a "team effort" and that Dr. Yu "knowingly held out the disputed paper as his own work, with knowledge that it included extensive duplications or close paraphrasings of the co-authored report." (Remand Decision by the 1988 Academic Freedom and Tenure Committee at 19,

21). At the remand proceedings, the Committee's goal was to decide whether the joint work met Dr. Yu's personal standard for plagiarism. *Id.* In other words, it sought to determine whether the disputed paper was essentially his sole accomplishment. *Id.*

The remand Committee concluded that Dr. Yu did not meet his standard for plagiarism. *Id.* It further found that he did not thoroughly understand how the mathematical computations had been converged. *Id.* at 20, 41. This caused the Committee to doubt the credibility of most of Dr. Yu's testimony. The Committee also questioned whether handwritten notes that he submitted were authentic. *Id.* at 38, 41.

The second proceeding created the opportunity to observe variations between testimony offered by one Dr. Yu's students in the first and second hearings. *Id.* at 25. Because Dr. Yu endorsed the student's testimony the Committee was inclined to believe that Dr. Yu's testimony on that point was not credible. *Id.* at 27.

We hold that Dr. Yu has failed to establish vindictiveness, with or without the benefit of a *Pearce* presumption. New, probative evidence was introduced at the remand hearing which would support a stricter penalty than that imposed by the first Committee. The Committee set forth valid non-vindictive reasons for the enhanced penalty and the presumption of vindictiveness has, therefore, been adequately rebutted. Dr. Yu has in no way been denied his constitutional right to due process and Appellants are entitled to judgment as a matter of law.

## CONCLUSION

We **AFFIRM** the district court's judgment that the Committee's finding that Dr. Yu plagiarized was supported by substantial evidence. We affirm the court's determination that the regulation concerning plagiarism was not vague, that no erroneous burden of proof was placed upon Dr. Yu, and that the composition of Committee members was not improper. We also affirm the district court's judgment that the Committee was justified in

increasing Dr. Yu's sanctions after the second hearing.